Artymae LITTLE, As Independent
Executrix of the Estate of Frank
J. Little, M.D., et al., Petitioners,

v.

Katherine Irene Barber SMITH,
Respondent.

No. 95–0744.

Supreme Court of Texas.

Argued Nov. 30, 1995.

Decided Jan. 31, 1997.

Rehearing Overruled May 16, 1997.

Joseph W. Wolfe, James C. Tidwell, Sherman, B. Jay Carmichael, Dallas, for Petitioners.

R. Michael Northrup, Julia F. Pendery, Dallas, for Respondent.

OWEN, Justice, delivered the opinion of the Court, joined by PHILLIPS, Chief Justice, and GONZALEZ, HECHT, SPECTOR and ABBOTT, Justices.

Katherine Smith, who was adopted as an infant, brought this suit to assert the right to inherit from her biological grandmother and, alternatively, to obtain damages or equitable relief for wrongful exclusion from her grandmother's estate. We conclude that all of these claims are barred by statutes of limitations.

I

The trial court rendered summary judgment against Katherine Smith. Accordingly, we consider the facts in the light most favorable to her.

Smith was born in 1932 in Sherman, Texas. The next day, she was placed with Hope Cottage in Dallas, where she was subsequently adopted by W.L. and Katherine Barber. When Smith was about ten years old, Katherine Barber told Smith that she was adopted. In later conversations, Barber also revealed where Smith had been born and that she had been adopted through Hope Cottage, but did not reveal the identity of either of Smith's biological parents.

Many years later, Smith began to search for information about her natural parents when her adult son was diagnosed with a malignant tumor. By that time, Katherine Barber had died. Smith contacted Hope Cottage, which agreed to send her birth records to her with all information about the identity of her biological parents deleted. It was not until about two years later, in 1989,

that Smith first obtained the names of her biological mother and father. Smith found a scrap of paper inside a metal box her adoptive mother had kept that said: "Thelma Little and Gus Eubanks. He is the son of the mayor of Sherman."

A few months later, in April 1989, Smith telephoned Dr. Frank Little, the brother of Thelma Little. Thelma Little had died twenty years earlier. Smith told Dr. Little she believed that she was the daughter of Thelma Little, to which Dr. Little responded, "I have a great deal of difficulty accepting your premise because in 1932 [the year Smith was born] I was 15 years old and living at home, as was Thelma, and I cannot believe I would not have known of her predicament had it existed." Smith asked for information about the family's history and health records, which Dr. Little supplied.

In October 1989, Smith filed a motion with a district court in Dallas County to obtain records from Hope Cottage, and she and Hope Cottage submitted an "Agreed Statement of Facts." The court signed an order granting Smith's motion on November 17, 1989, and Smith obtained an unredacted copy of Hope Cottage's record of her birth. This one page document identified Thelma Little as her mother, although it is not signed or acknowledged by Thelma Little or any member of her family. It appears to be an internal record kept by Hope Cottage.

Thereafter, Smith went to the Sherman public library and read the obituary of O.L. Little, Thelma Little's father, that referred to his ownership of cattle and oil interests in Grayson County. She then went to the Grayson County courthouse and made copies of wills, including that of Lula Little, her biological grandmother. Lula Little had died in 1982, leaving a will that was filed for probate by her son Dr. Frank Little that same year. Lula Little had four other children (Thelma Little Hart, Mary Little Rogers, Bettie Sue Little LeBrun, and Geraldine Little Dowden), who, along with Dr. Little, were named as beneficiaries under the will and were to receive equal shares of the estate. Two of Lula Little's children, including Thelma Little Hart, had predeceased her.

Thelma Little Hart was survived by two children born during her marriage to Sterling Hart, but her sister had died leaving no heirs. Under the antilapse statute, TEX. PROB.CODE § 68, Dr. Little distributed a one-fourth interest to each of the three surviving children of Lula Little, and the one-fourth share of Lula Little's estate that would have gone to Thelma was distributed to Thelma's two children from her marriage to Hart.

Smith brought this action in November 1991, almost eight years after Dr. Little had made the final distribution of Lula Little's estate and had filed an affidavit closing the administration of that estate on December 31, 1983.[1] Smith's causes of action fall into two categories. She essentially demands a one-twelfth interest in the assets of the estate of Lula Little by various means, including a declaratory judgment, a claim for an accounting, a claim for a constructive trust, and a claim for partition. The value of this one-twelfth interest is approximately $33,000. Smith also asserts derivative claims against Dr. Little and other heirs including breach of fiduciary duty, gross negligence, "constructive fraud," and conspiracy, and she seeks actual and punitive damages.

The defendants moved for summary judgment, asserting limitations. They relied on the general four-year statute, TEX. CIV. PRAC. & REM.CODE § 16.051, because it had the longest period of limitations among the statutes that were arguably applicable. The defendants further maintained in their motion that Dr. Little should have no liability for his failure to "conduct a global search" for Smith, assuming for the purposes of the summary judgment motion that Dr. Little was aware that his sister had given birth to a child out of wedlock. The defendants contended that Dr. Little would not know the identity or location of the child and that the adoption records were sealed. The defendants also included a broader assertion denominated in their motion as "public policy," arguing that probate proceedings should be final.

Smith countered that the discovery rule applied and that her causes of action did not

1. Dr. Little died a little more than a year after giving his deposition in this suit.

accrue until November 17, 1989, the date the district court in Dallas signed the order giving her access to Hope Cottage's records, or December 8 of that year, the day her attorney actually received the records. In this Court, she has also contended that her "right to bring a declaratory judgment action ... did not accrue until [April] 1989 when Defendants denied that she was a rightful heir."

The trial court rendered summary judgment in favor of the defendants. Smith appealed. The court of appeals held that the claims for an interest in the estate were barred by limitations, but concluded that the discovery rule applied to Smith's claims of fraud, conspiracy, breach of fiduciary duty, and gross negligence. 903 S.W.2d 780, 786–88. The court of appeals found that there were fact questions as to when Smith should have known that Thelma Little was her natural mother and when Smith should have known that she had been excluded from Lula Little's estate. *Id.* at 786–87. All parties seek review in this Court.

## II

■ There are competing interests under various Texas statutes at issue in this case: (1) the right of adoptees to inherit from or through their natural parents, (2) the confidentiality of the identities of birth parents and their families, and (3) the need for finality of probate proceedings. We must determine whether the discovery rule should apply in cases of this nature to extend, perhaps for decades, the period of time within which adoptees may bring suit to assert rights of inheritance. In weighing the competing interests identified by the Legislature, we conclude that the need for finality of probate proceedings and the degree of confidentiality the Legislature has seen fit to extend to the adoption process are paramount. We consider first the claims that in essence seek a share of Lula Little's estate.

■ Statutes of limitations afford plaintiffs a period of time that the Legislature deems reasonable to present claims, and such statutes cut off the pursuit of cases in which "the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." S.V. v. R.V., 933 S.W.2d 1, 3 (Tex.1996) (quoting *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex. 1990)). Statutes of limitations impose finality.

The need for finality of probate proceedings is well-recognized by this and other courts. A state's interest in the orderly disposition of decedents' estates was said by the United States Supreme Court to "justif[y] the enforcement of generally applicable limitations on the time and manner in which claims may be asserted," even though those limitations may cut off the right of an illegitimate child to inherit. *Reed v. Campbell,* 476 U.S. 852, 855, 106 S.Ct. 2234, 2237, 90 L.Ed.2d 858 (1986). The Supreme Court held in *Reed* that a Texas statute prohibiting an illegitimate child from inheriting from her father unless her parents had subsequently married was unconstitutional. *Id.* at 856, 106 S.Ct. at 2237–38. It found that the state's disapproval of the conduct of the child's parents was insufficient to justify discriminatory treatment of the child. *Id.* at 854 n. 5, 106 S.Ct. at 2237 n. 5. However, imposition of limitations to narrow the time within which such claims could be asserted would "of course" be justified. *Id.* at 855, 106 S.Ct. at 2237; *see also Lalli v. Lalli,* 439 U.S. 259, 268, 99 S.Ct. 518, 524–25, 58 L.Ed.2d 503 (1978) ("We have long recognized" that a state's goal to provide for the just and orderly disposition of property at death "is an area with which the States have an interest of considerable magnitude.").

This Court recognized that there should be a definite time limit for presenting a claim against an estate in *Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex.1981), where we also observed that statutes of limitations "provide stability and security to personal affairs and protect property rights." *Id.* at 84; *see also Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 354 n. 6 (Tex.1990) (noting the "state['s] interest in the prompt settlement of a decedent's affairs"); *Turner v. Nesby,* 848 S.W.2d 872, 877 (Tex.App.—Austin 1993, no writ) (declaring that "the state's interest in the finality of judgments distributing estates can constitute a sufficient basis for barring

claims," even though those claims may be meritorious).

Statutes of limitations preclude claimants from sleeping on their rights. In many cases, however, adoptees may be unable to timely assert inheritance rights, even with the exercise of the utmost diligence. Not all adoptees may know that they are adopted within the applicable limitations period. Even if they know that they are adopted, they may not know where they were born or, more to the point, where the adoption proceedings occurred, so that they may attempt to obtain access to their birth records. Conducting a meaningful search for your identity is difficult if you do not know where to begin that search. And assuming an adoptee found the correct court to petition, that court could well refuse to open adoption records if the only basis for doing so was to allow the adoptee to see if any inheritance claims existed. The fact that in this case a court opened Smith's records does not mean that a different judge would have done so or even that the same judge would have done so years earlier.

Thus, we recognize the difficulties adopted children may encounter in identifying their biological parents. But we must also bear in mind that inheritance rights and statutes of limitations are largely within the domain of the Legislature, as are the laws that protect the identity of biological parents. The legislative intent and policies embodied in the statutes governing adoptions are at odds with applying the discovery rule to allow adopted children to assert inheritance rights many years after estates are settled.

The Legislature has drawn a clear line marking the boundaries of information that will be made available to adoptees and their adoptive parents from public records. Under former section 16.032 of the Texas Family Code and the 1995 amendments to the Code, detailed information about the natural parents is to be included in the records available to the adoptee and adoptive parents, but

the identity of the natural parents remains confidential unless "good cause"[2] is shown and a court order is obtained. TEX. FAM. CODE §§ 162.006, .007, .018, .022. Under section 162.007, the adoption records are to include information about the biological parents' health and medical history; any genetic diseases or disorders; their height, weight, eye, and hair color; nationality and ethnic background; general levels of education; religious backgrounds; and psychological, psychiatric, or social evaluations. *Id.* § 162.007(d). However, the identity of the biological parents must be edited from the public records. *See id.* §§ 162.006, .018(b); *see also* 25 TEX. ADMIN. CODE § 181.10 (restricting availability of birth records and requiring a record of birth based on adoption to be sealed or expunged "to insure the confidentiality of adoption placements").

The information about the biological parents detailed in the statute, which excludes the identity of the parents, is to be provided to the adoptee or adopting parents by the department, agency, or person who places the child for adoption, regardless of when the adoption occurred, if that information is available. See section 7 of the Act amending *former section 16.032, which provides that* "[t]his Act applies to adoptions consummated before, on, or after the effective date of this Act." Act of May 27, 1989, 71st Leg., R.S., ch. 1231, § 7, 1989 Tex. Gen. Laws 4954, 4957; *see also Methodist Home v. Marshall,* 830 S.W.2d 220, 225 (Tex.App.—Dallas 1992, orig. proceeding) (holding that section 16.032, the predecessor to sections 162.005–.008, applied to a 1980 adoption that took place prior to the statute's enactment in 1983).

To strike a balance between the respective desires of the biological parents and their offspring to either retain anonymity or to learn the identity of one another, the Legislature has implemented a comprehensive voluntary registration process. *See* TEX. FAM. CODE §§ 162.401–.422. An adoptee who wants to know the identity of his or her

---

2. Section 162.022 provides:

**§ 162.022. Confidentiality Maintained by Clerk**

The records concerning a child maintained by the district clerk after entry of an order of adoption are confidential. No person is entitled to access to the records or may obtain information from the records except for good cause under an order of the court that issued the order. TEX. FAM.CODE § 162.022.

biological parents, a parent whose child has been adopted and wants to locate that child, or a biological sibling may file an application with a registry. *See id.* § 162.406. The statute spells out processes for establishing these registries, for making application to them, and for determining if applications "match." *Id.* §§ 162.403, .405, .414. When a "match" is found, the registry is required by statute to remind the registrants that they may withdraw the registration before disclosure is made, and each registrant is required to sign a consent to disclosure. *Id.* § 162.416(a)(2)-(3). Even after the death of a registrant, identifying information will not be released unless the registrant had specifically consented in writing to a posthumous disclosure of a match and that consent remained in effect and valid at the time of death. *Id.* § 162.416(b); *see also id.* § 162.409(a)(10) (requiring an applicant to a registry to state whether disclosure of identifying information after death of the applicant is authorized). The statutes further prescribe criminal penalties for disclosure of information from a registry in violation of the statutes and for attempts to obtain information from a registry by impersonating an employee of a registry or impersonating an adoptee, birth parent, or biological sibling. *Id.* § 162.421.

These procedures are designed to maintain the confidentiality of the identities of adoptees, their natural parents, and biological siblings unless there is a *mutual* desire for that information to be disclosed. *See id.* § 162.401. The statutes contain no indication that an adoptee can circumvent these procedures simply by asking a court to open the adoption records so that any inheritance rights can be asserted.

As can be seen from these statutes, confidentiality is given a high priority in the legislative scheme. The statutes retaining the right of adoptees to inherit by descent and distribution from their biological parents do nothing to disturb the Legislature's imposition of confidentiality or the Legislature's carefully constructed scheme for revelation of information. TEX. PROB.CODE § 40;[3] TEX. FAM.CODE § 161.206(b)[4] (formerly TEX. FAM. CODE § 15.07 ).

■ In discovery rule cases, we have held that a cause of action does not accrue until the plaintiff knows of the facts giving rise to the cause of action. *See Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 262 (Tex.1994); *Gaddis v. Smith,* 417 S.W.2d 577, 578 (Tex.1967). Yet in many cases in which an adoptee seeks to assert inheritance rights years after the death of a biological relative, the inability to have discovered the right to inherit at an earlier date is a direct result of the legislative scheme. The Legislature has expressly sanctioned the protection of the identity of natural parents. The Legislature has in essence said that adoptees may not be able to "know" from whom they could be entitled to inherit. Absent constitutional considerations, when the Legislature has put in place a scheme that may prevent an adoptee from ever obtaining the identity

3. Section 40 of the Probate Code provides:

**§ 40. Inheritance By and From an Adopted Child**

For purposes of inheritance under the laws of descent and distribution, an adopted child shall be regarded as the child of the parent or parents by adoption, such adopted child and its descendants inheriting from and through the parent or parents by adoption and their kin the same as if such child were the natural child of such parent or parents by adoption, and such parent or parents by adoption and their kin inheriting from and through such adopted child the same as if such child were the natural child of such parent or parents by adoption. The natural parent or parents of such child and their kin shall not inherit from or through said child, *but said child shall inherit from and through its natural parent or parents.* Nothing herein shall prevent any parent by adoption from disposing of his property by will according to law. The presence of this Section specifically relating to the rights of adopted children shall in no way diminish the rights of such children, under the laws of descent and distribution or otherwise, which they acquire by virtue of their inclusion in the definition of "child" which is contained in this Code.

TEX. PROB.CODE § 40 (emphasis added).

4. Section 161.206(b) of the Family Code similarly provides:

(b) An order terminating the parent-child relationship divests the parent and the child of all legal rights and duties with respect to each other, *except that the child retains the right to inherit from and through the parent* unless the court otherwise provides.

TEX. FAM.CODE § 161.206(b) (emphasis added).

of the natural parents, it would be unwise for this Court to apply the discovery rule to hold open for years or even decades the right to assert inheritance claims on the chance that adoptees may learn the identities of their biological relatives. The legislative policies embodied in the statutes calling for confidentiality of adoption records and finality of estate matters weigh heavily against preserving such claims indefinitely. Accordingly, we conclude that the discovery rule is unavailable in suits to assert a right of inheritance by adoptees.

### III

For the same reasons, Smith's claims against Dr. Little and the other heirs for breach of fiduciary duty, gross negligence, "constructive fraud," and conspiracy are barred by limitations.

■ However, one aspect of the fraud claim asserted by Smith does not survive summary judgment, irrespective of the applicability of the discovery rule to the wrongful exclusion from inheritance claims, and we consider it briefly. When Smith spoke with Dr. Little by telephone in April 1989, he told her that he had difficulty believing she was the child of Thelma Little because he lived at home with his sister at the time Smith was born and he would have known of his sister's "predicament." Smith claims this is an affirmative misrepresentation that prevented her from knowing with certainty if she was the child of Thelma Little. Even if we assume that Dr. Little's statement was false and met all the other requirements for actionable fraud, Smith's claim to a share of Lula Little's estate had long since been barred by limitations when this conversation took place in 1989. If Dr. Little had instead told Smith that she was indeed the daughter of Thelma Little, Smith could not at that point reopen the estate and demand her inheritance. Any fraud that occurred during the 1989 phone conversation did not result in Smith's exclusion from Lula Little's estate.

■ Smith's other allegation of fraud and her claims that Dr. Little breached his fiduciary duty or was grossly negligent are more substantive. She contends that Dr. Little should have taken steps to determine heir-

ship under sections 48 and 53(b) of the Probate Code and that "these steps might have uncovered the existence of Smith and she would have received her rightful inheritance." Although section 48 does not appear to require an executor to institute proceedings under the circumstances of this case, we construe Smith's allegations to assert that Dr. Little knew his sister had given birth to a child out of wedlock and that as the executor of Lula Little's estate, he breached a duty to take steps to find Smith. We do not resolve today what duty, if any, Dr. Little owed to Smith, but assume for purposes of deciding the applicability of limitations that there was an act or omission that amounted to fraud, breach of fiduciary duty, and gross negligence by Dr. Little.

### A

■ Smith acknowledges that "the wrongful conduct did not occur until 1983, when Dr. Little closed Lula Little's estate without distributing Smith her share of the estate and without filing an Application for Determination of Heirship." Generally, in a case of fraud the statute of limitations does not commence to run until the fraud is discovered or until it might have been discovered by the exercise of reasonable diligence. See Ruebeck v. Hunt, 142 Tex. 167, 176 S.W.2d 738, 739 (1944). Similarly, when there has been a breach of fiduciary duty, the statute of limitations does not begin to run until the claimant knew or should have known of facts that in the exercise of reasonable diligence would have led to the discovery of the wrongful act. See Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377, 394 (1945).

Texas courts have refused to apply the discovery rule to claims arising out of probate proceedings in most instances, however, even in the face of allegations of fraud. Such claims are barred by limitations because the claimant has constructive notice of the probate proceedings. That was the case in Mooney v. Harlin, 622 S.W.2d 83, 84 (Tex. 1981), in which the plaintiff claimed that she had cohabited with and cared for the decedent for over thirty years in exchange for his promise that she would be a beneficiary un-

der his will. The decedent executed a will just prior to his death that did not include the plaintiff. She brought suit, but not until more than four years had passed since the will was admitted to probate. We held that her claim was barred because she had constructive notice of the filing of the will for probate. She could have determined that she had been excluded from the estate by examining the public records. *Id.* at 85.

Similarly, in *Neill v. Yett*, 746 S.W.2d 32, 33–34 (Tex.App.—Austin 1988, writ denied), a granddaughter sued to set aside her grandfather's will more than three years after it had been admitted to probate, alleging that the will had been fraudulently probated. The court of appeals held that her suit was time-barred because an examination of the probate records would have revealed there was no bequest to the granddaughter. *Id.* at 36; *see also Estate of Ross*, 672 S.W.2d 315, 318 (Tex.App.—Eastland 1984, ref'd n.r.e.) (holding that four daughters who sought to set an aside order admitting their father's will to probate had constructive notice because "[p]ersons interested in an estate are charged with notice of the contents of probate records").

▇▇▇ These decisions are illuminating because they recognize the strong public interest in according finality to probate proceedings. We cannot, however, extend the concept of constructive notice to Smith's claims. Constructive notice is usually applied when a person knows where to find the relevant information but failed to seek it out. *See Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376, 388 (Tex.1965) ("*Means of knowledge* with the duty of using them are in equity equivalent to knowledge itself.") (quoting *Hexter v. Pratt*, 10 S.W.2d 692, 693 (Tex. Comm'n App.1928, judgm't adopted) (emphasis added)); *see also "Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 939 (Tex.1972) (charging purchaser of real property with constructive notice of facts that would have been revealed if inquiry of lessee had been made); *Southwest Title Ins. Co. v. Woods*, 449 S.W.2d 773, 774 (Tex.1970) (holding that recorded instrument not in chain of title does not establish constructive notice).

At the time Lula Little's will was filed for probate and at the time the estate was closed, Smith did not know the identity of her biological mother. The probate records cannot be constructive notice to Smith because she did not know which records were applicable to her, and even if she had seen the records regarding Lula Little's estate, they would not have imparted the fact that she was an heir. She could not know of her exclusion from Lula Little's estate and the alleged breach of fiduciary duty until she learned the identity of her natural mother.

## B

We have said that fraud vitiates whatever it touches, *see Computer Assocs. Int'l, Inc. v. Altai*, 918 S.W.2d 453, 456 (Tex.1996), and that the conduct of a fiduciary is measured by "finer loyalties exacted by courts of equity," *Courseview, Inc. v. Phillips Petroleum Co.*, 158 Tex. 397, 312 S.W.2d 197, 205 (1957). But when an adopted child asserts a claim against an executor or an administrator long after an estate has been closed, we must bear in mind that the silence of an administrator or executor is not the only reason that an adoptee is unable to discover the identities of the birth parents. The statutes discussed above, coupled with the desire of the natural parents to remain anonymous, are often a barrier. On the date that Dr. Little closed the estate of Lula Little, the identity of Smith's natural mother remained confidential, as it had for the fifty-one years since Smith's birth. There is no evidence that Thelma Little made an effort to locate or to contact Smith at any time, and Smith was not acknowledged or remembered in Thelma Little's will. Thelma Little maintained the confidentiality of her identity, utilizing the statutory right to do so. Furthermore, as appears to be the case here, adoptive parents may participate in a decision to maintain the anonymity of the natural parents. Smith's adoptive mother knew the identities of Smith's birth parents, but chose to remain silent throughout her life. Thus, there were many participants in the withholding of information from Smith, including the State through its enactment of confidentiality provisions.

■ Given the fact that adoptive parents, biological parents, and other relatives may lawfully choose to conceal the identities of birth parents from adoptees, adoptees should not be entitled to rely on the discovery rule to extend the time for bringing suit against an executor or an administrator of an estate for wrongful exclusion from that estate. This conclusion is also compelled by the decided need for finality of estate matters and because the legislative scheme so strongly protects the identity of biological parents. The prospect that suits by adoptees may be filed many years or even decades after the death of the natural parent or other biological relative further weighs in favor of requiring adopted children to assert any rights of inheritance or derivative claims within the same timeframe as other heirs or claimants without benefit of the discovery rule. The discovery rule should not be applied to claims against an executor, administrator, or heir for failure to seek out or find an adopted child.[5]

There are arguments for a contrary rule of law. If biological parents want to foreclose the right of inheritance, they may petition to have such a provision included in the order terminating parental rights. *See* TEX. FAM. CODE § 161.206(b). There are also compelling arguments that adoptees have the *right* to inherit unless the adoption decree otherwise orders and that adoptees who exercise the utmost diligence are sometimes unable to discover the identities of their biological parents within the limitations period. These are valid considerations, but they should not outweigh the need for finality in settling estates, the explicit statutory recognition that the identity of biological parents is confidential absent either "good cause" or the mutual desire of a biological parent and an adoptee to locate one another, and the considerations that support the imposition of statutes of limitations generally.

With regard to the conspiracy claim, the record contains no evidence of any conspiracy to exclude Smith from the estate of Lula Little. In any event that claim is barred by limitations for the same reasons that Smith's claims for fraud, breach of fiduciary duty, and gross negligence are barred.

■ The concurrence argues that the Court "retreats" from its decisions in *Computer Assocs. Int'l, Inc. v. Altai*, 918 S.W.2d 453 (Tex.1996), and S.V. v. R.V., 933 S.W.2d 1 (Tex.1996). We do not. The discovery rule is a judicially created principle of law through which "[c]ourts out of necessity have made exceptions in order to do justice." *Gaddis v. Smith*, 417 S.W.2d 577, 580 (Tex. 1967). In most discovery rule cases, courts are faced with common-law causes of action and general statutes of limitations. We held in *Altai* and confirmed in S.V. v. R.V. that the elements of inherent undiscoverability and objective verifiability "balance the conflicting policies in statutes of limitations: the benefits of precluding stale or spurious claims versus the risks of precluding meritorious claims that happen to fall outside an arbitrarily set period." S.V. v. R.V., 933 S.W.2d at 6; *see Altai*, 918 S.W.2d at 457. However, within the confines of the federal and Texas Constitutions, the Legislature is free to determine that the discovery rule should not apply in certain cases, and it has done so. *See, e.g., Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985) ("[T]he Legislature's intent in passing Art. 4590i, § 10.01, was to abolish the discovery rule in cases governed by the Medical Liability Act"); *cf. Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex. 1985) (holding that former article 4590i, section 10.01 violated the open courts provision when it abridged the right to sue before the claimant had a reasonable opportunity to discover the wrong).

In the case before us today, clear legislative policies bear directly on whether the discovery rule should be applied. When the Legislature has implemented statutory schemes that inform our decision, we should be guided by the Legislature's determinations of the weight to be given competing interests.

The Court is sensitive to the desires of many adopted children to find their biological

---

**5.** We do not decide in this case whether or under what circumstances an executor, administrator, or heir has a duty to search for or notify an adopted person who has a right to inherit from a decedent.

parents, and we recognize that adopted children have inheritance rights from and through their natural parents unless those rights are terminated during the adoption proceedings. We are constrained to conclude, however, that the legislative determinations in several arenas dictate that claims for inheritance and any derivative claims must be asserted within the statutory limitations periods.

\* \* \* \* \*

The trial court properly entered summary judgment on all claims. The judgment of the court of appeals is affirmed in part and reversed in part.

ENOCH, J., filed a concurring opinion, in which CORNYN and BAKER, JJ., join.

ENOCH, Justice, joined by CORNYN and BAKER Justices, concurring.

All of Smith's various claims concern the same injury—exclusion from Lula Little's estate. Her causes of action accrued when Dr. Little filed the affidavit closing the estate on December 31, 1983. Although each of her claims is subject to either the two-year or the four-year statute of limitations, Smith did not sue until almost eight years after the accrual date. *See* TEX. CIV. PRAC. & REM.CODE §§ 16.003, 16.004, 16.051. Thus, unless the accrual of her causes of action is somehow deferred, limitations bars all of Smith's claims. I agree with the Court's conclusion that the discovery rule does not defer the accrual of any of Smith's causes of action and thus, join in the Court's judgment. I do not join in the Court's opinion, however, because I disagree that the decision to apply the discovery rule in any given case is simply the result of balancing policy considerations on an ad hoc basis.

The discovery rule defers the accrual of a cause of action until the plaintiff knew or should have known the facts giving rise to the cause of action. S.V. v. R.V., 933 S.W.2d 1, 4 (Tex.1996); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex.1996). This judicially created exception to statutes of limitations prevents the preclusion of meritorious claims when the injured party cannot learn of the existence of a cause of action before the statutory limitations period has expired. *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex.1976). However, courts must balance the purpose of the discovery rule against the equally laudable purpose of statutes of limitations—the quelling of stale or fraudulent claims. *Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex.1977).

Only one year ago, the Court moved away from diverse and disparate ad hoc determinations to glean from our case law a principled basis for deciding whether to apply the discovery rule in any given case. We found that our discovery rule cases were unified by a general principle that captured the proper balance between the purpose of the discovery rule and the underpinnings of limitations statutes. *Altai*, 918 S.W.2d at 456. Accrual of a cause of action is deferred, we held, in cases of fraud or in which the wrong-doing is fraudulently concealed, and in cases in which the alleged wrongful act and resulting injury were inherently undiscoverable when they occurred but may be objectively verified. *Id.* at 455–56. The Court reaffirmed this general principle in S.V. 933 S.W.2d at 6. The Court retreats today from the certainty of that principled analysis.

Under the general principle articulated in *Altai* and reaffirmed in S.V., the discovery rule does not defer the accrual of Smith's claims. Smith's alleged injury is her wrongful exclusion from the proceeds of Lula Little's estate. Under *Altai*, this exclusion must be inherently undiscoverable for the discovery rule to apply to Smith's claims. 918 S.W.2d at 456. Exclusion from the proceeds of an estate is not *inherently* undiscoverable given the doctrine of constructive notice applicable in probate matters.

Texas law charges persons interested in an estate with notice of the contents of probate records. *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex.1981). This constructive notice creates an irrebuttable presumption of actual notice. *Mooney*, 622 S.W.2d at 85. Because parties interested in an estate are charged with notice of the contents of probate documents, there can be no doubt about whether a beneficiary has been wrongfully excluded from an estate. *Id.* Consequently, the pre-

sumption that beneficiaries have actual notice of the contents of probate records necessarily mandates that they also have notice of their exclusion from those records.

Despite the presumption that Smith had actual notice of her exclusion from the estate, Smith urges us to recognize that the circumstances of her case distinguish it from a conventional wrongful exclusion case so as to avoid the constructive notice doctrine. Specifically, she argues that because her adoption records were sealed, she could not know the identity of her natural parents without obtaining a court order to open the records. *See* TEX. FAM.CODE § 162.022. Without the knowledge of her parents' identity, she contends, she could not know which probate documents were relevant. This hardship, Smith argues, excuses her from the presumption of actual notice of the contents of her natural ancestors' probate records. I disagree.

In probate disputes, Texas courts have refused to look beyond the presumption of notice to defer accrual. *See, e.g., Mooney,* 622 S.W.2d at 85. The unusual circumstances of Smith's claims do not merit a departure from this rule of law. I do not dispute that the sealing of Smith's adoption records presented a potential barrier to her discovery of her inheritance rights in Lula Little's estate. Nevertheless, the law charges Smith with the knowledge of her right to inherit from and through her natural parents without an executor having to so inform her. *See* TEX. PROB.CODE § 40; *see also Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 n. 3 (Tex.1990)(noting that "all persons are presumed to know the law"). Further, in 1973, the Legislature established a method for opening adoption records upon a showing of "good cause." Act of June 15, 1973, 63d Leg., R.S., ch. 543, § 1, 1973 Tex. Gen. Laws 1411, 1419 (amended 1975, 1983, 1995)(current version at TEX. FAM. CODE § 162.022); *see also* Rucker, Comment, *Texas Adoption Laws and Adoptees' Rights of Access to Confidential Records,* 15 ST. MARY'S L.J. 153, 175–79 (1983). The law thus provided Smith with the means to discover her natural parents' identity.

Indeed, with little difficulty and in just five weeks, Smith discovered the identity and deaths of her natural mother and grandmother. That Smith did in fact discover the identity of her natural parents in such a short period of time is strong evidence that her alleged injury was not inherently undiscoverable.

More to the point, I find no reason to create a separate probate system for adopted children who wish to inherit from their natural ancestors. Many heirs for any number of reasons may not know the identity of their ancestors. It is unwise for the Court to excuse an adopted child from the constraints of constructive notice simply because he or she may not have known the name of his or her ancestor. The doctrine of constructive notice applies to all probate proceedings to effectuate the compelling interest in the finality of estates. *See Reed v. Campbell,* 476 U.S. 852, 855–56, 106 S.Ct. 2234, 2237–38, 90 L.Ed.2d 858 (1986); *see also Turner v. Nesby,* 848 S.W.2d 872, 877–78 (Tex.App.—Austin 1993, no writ); *Henson v. Jarmon,* 758 S.W.2d 368, 371 (Tex.App.—Tyler 1988, no writ). Constructive notice allows for the prompt settlement of an estate without the threat of having the estate reopened years or even decades after the death of the parent or other biological relative. The Court's decision today thwarts that interest in finality by treating adopted children as different from others who do not know the names of those from whom they might inherit.

Constructive notice also defeats Smith's contention that fraud prevented the running of limitations until the fraud was discovered, or, by the exercise of reasonable diligence, should have been discovered. *Mooney,* 622 S.W.2d at 85. In *Mooney,* the plaintiff sued an estate's executor, claiming that she had been fraudulently excluded as a beneficiary. *Id.* at 84. The trial court granted the executor's summary judgment motion on limitations grounds, and the court of appeals reversed. *See Harlin v. Mooney,* 604 S.W.2d 199, 200 (Tex.Civ.App.—Dallas 1980), *rev'd,* 622 S.W.2d 83 (Tex.1981). This Court reversed the court of appeals' judgment, holding that because an examination of the probate records would have revealed to the

plaintiff that she had been excluded from the estate, "the statute of limitations began to run when the will was admitted to probate." *Mooney*, 622 S.W.2d at 85. We then applied limitations to bar her claim for fraud:

> A person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records. When evidence of fraud may be disclosed by examination of public records this court has held limitations will begin to run from the time the fraud could have been discovered by the exercise of ordinary diligence.

*Id.*

We marked the admission of the will to probate as the point at which limitations began to run. *Id.* In this case, however, the admission of the will to probate would not have informed Smith of any fraud on Little's part because the will did not on its face exclude Smith from the estate. It was not until Little distributed the estate's proceeds pursuant to the anti-lapse statute that Smith was excluded. *See* TEX. PROB.CODE § 68. I would hold, therefore, that limitations began to run upon Little's filing of the affidavit closing the estate on December 31, 1983. Because Smith's fraud claim is likewise predicated on her exclusion from the estate proceeds, constructive knowledge of the contents of the probate records prevents her from now claiming that she could not ascertain her injury with diligence within the limitations period. *Mooney*, 622 S.W.2d at 84–85. Accordingly, when Little closed the estate, Smith constructively knew that she had been excluded as a beneficiary.

As troubling as the Court's dismissal of the constructive notice doctrine is the Court's rejection of a fiduciary duty in these circumstances. Smith's lack of a relationship with the executor and her lack of expectation that her inheritance right would be protected, the Court concludes, prevented a fiduciary duty from arising between the executor of Lula Little's estate and Smith. But the *only* requirement that must exist before a fiduciary duty arises between an executor and a beneficiary of an estate is that a person or entity be an executor. *See Humane Society v. Austin Nat'l Bank*, 531 S.W.2d 574, 577

(Tex.1975)(fiduciary duty of bank "arose by reason of its position as executor of the estate"); *see also Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 387 (1945)("When persons enter fiduciary relations each consents, as a matter of law, to have his conduct towards the other measured by the standards of the finer loyalties exacted by courts of equity."). Clearly, the law imposes no requirement of a close relationship between the executor and beneficiary for a fiduciary relationship to arise. *See Humane Society*, 531 S.W.2d at 577; *Slay*, 187 S.W.2d at 387.

Given the existence of a fiduciary duty owed by Little as executor, courts presume the nature of the injury to be inherently undiscoverable. *Altai*, 918 S.W.2d at 456. However, "a person owed a fiduciary duty has some responsibility to learn when he has been injured." *Id.* That notion is particularly applicable to cases concerning probate disputes in light of the constructive notice doctrine. An executor's fiduciary duty does not absolve beneficiaries from exercising some diligence in protecting their rights. The law of constructive notice prevents Smith or any other beneficiary from relying exclusively upon an executor or administrator to defend her interests. *See Jennings v. Srp*, 521 S.W.2d 326, 330 (Tex.Civ.App.— Corpus Christi 1975, no writ).

\* \* \* \*

I agree with the Court that limitations bars Smith's various causes of action. But because I disagree with the Court's retreat from the discovery rule principles enunciated just one year ago in *Altai* and reaffirmed in *S.V.*, I cannot join the Court's opinion. Rather, I would follow the reasoned unifying principles identified in *Altai* and hold that the discovery rule does not apply because Smith's exclusion from Lula Little's estate was not inherently undiscoverable. Accordingly, I concur in the Court's judgment only.