# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

- - - - - - - - - - - - - -
## NO. 03-01-00682-CV
- - - - - - - - - - - - - -


**Cecelia B. Dorsey, Dependent Administrator of the Estate of Sally Lou Roberts, Appellant**

**v.**

**Estate of Levi Mathis (L.M.) Roberts, Deceased, Appellee**


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
-
### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. 75,847, HONORABLE GUY S. HERMAN, JUDGE PRESIDING
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
-


Appellant Cecelia B. Dorsey appeals the probate court=s final judgment rendered October 31, 2001, finding that Cathy Jo Roberts Jackson is the daughter of decedent Levi Mathis Roberts and that her interest in his estate includes (1) all his community interest in real and personal property; (2) all his separate real property subject to his spouse=s, Sally Lou Roberts=s, life estate in one third; and (3) two thirds of his separate personal property. In five issues, appellant contends that: (1) the court erred by failing to find Cathy=s[1] application barred by limitations; (2) there is insufficient evidence to support the court=s finding that Cathy complied with and met all matters of proof required to support her application to determine heirship; (3) the court abused its discretion by denying appellant=s request that Cathy be

---

[1]  For the sake of clarity, we will use the parties= first names.

fingerprinted; (4) there is insufficient evidence to support the court=s finding that Cathy is an adopted child; and (5) the judgment is void because it is not supported by Cathy=s application. We will affirm the judgment of the probate court.

## BACKGROUND

On February 19, 1985, Levi died intestate in Travis County and was survived by his second wife, Sally. Levi and Sally did not have children. At the time of his death, Levi owned real and personal property of a probable value in excess of between $50,000 and $100,000.[2] Levi was previously married to Clara Louise Mackey, who died in 1967. Levi and Clara had one biological child who died shortly after birth, and they adopted Cathy, who was Clara=s niece. Levi and Sally owned a home at the time of his death. Apparently, Sally continued to live in or retain the home until her death in February 2001.

On March 13, 1985, Gertrude Shaw filed an affidavit of heirship (Athe Shaw affidavit@) in the Travis County Deed Records stating that (1) one child was born to Levi and Clara and that this child=s death occurred shortly after birth, (2) no other child was born to or adopted by Levi and Clara, and (3) no child was born to or adopted by Levi and Sally during their marriage.

On July 5, 2001, Cathy filed an application to determine heirship, claiming to own one half of Levi=s community property and all of his separate property. In her application, Cathy alleged that Levi

_____

[2] Gertrude Shaw=s affidavit estimates the property=s value as less than $50,000 at the time of Levi=s death. Cathy=s application to determine heirship estimates the property=s value as in excess of $100,000.

2

owned the following property at the time of his death: AOne half (2) Community Property interest in Decedent=s homestead, 1706 East 32nd Street, Austin, Texas 78724.  One half (2) Community property interest in cash, insurance proceeds, household goods, and personal effects.  100% of Decedent=s separate property.@  On August 23, Cecelia Dorsey, Sally=s sister and the dependent administrator of her estate, filed an answer generally denying Cathy=s allegations and pleading the affirmative defense of limitations.  Cecelia contended that Cathy=s claim was barred because it had been sixteen years since Levi=s death and the filing of the Shaw affidavit in the real property records of Travis County.

On September 12, 2001, Cecelia filed an amended answer requesting the court to require Cathy to prove the allegations in her application by sufficient evidence, including fingerprinting, in light of her criminal history.  On October 17, the probate court held a hearing on Cathy=s application to declare heirship.  On October 31, the probate court rendered a judgment declaring that Cathy was Levi=s daughter and awarding her the following interest in his estate: (1) AAll of Decedent=s community interest in real and personal property@; (2) AAll of Decedent=s separate real property subject to Sally Lou Roberts= [sic] estate for life in 1/3@; and (3) A2/3 of Decedent=s separate personal property.@  Cecelia appeals the judgment.

## DISCUSSION

### *Statute of Limitations*

In her first issue, Cecelia contends that the probate court erred as a matter of law by failing to find Cathy=s claim barred by limitations.  Cecelia argues that Athe evidence conclusively established all vital facts in support of the statute of limitations barring this Application to Declare Heirship.@

**3**

Cecelia contends that because the probate code does not specify a limitations period for Cathy=s application to determine heirship, the four-year residual limitations period of section 16.051 of the Texas Civil Practice and Remedies Code applies: AEvery action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.@ Tex. Civ. Prac. & Rem. Code Ann. ' 16.051 (West 1997). Cathy responds that section 16.051 expressly excludes Aan action for the recovery of real property,@ and therefore the residual limitations period does not apply to her cause of action. *See York v. Flowers*, 872 S.W.2d 13, 16 (Tex. App.CSan Antonio 1994, writ denied).

Cathy brought this suit to assert her challenged interest in Levi=s estate. The record does not reflect an inventory of Levi=s personalty;[3] Cecelia asserts in her appellate brief that A[d]etermining which personalty belonged to Decedent is next to impossible.@ At oral argument, the parties were unable to say what, if any, personalty remains. Levi=s residence was his primary asset.

---

[3] The only reference we can find to any of Levi=s personalty is the testimony of Pat Reed in the reporter=s record of the October 17, 2001, hearing on Cathy=s application to determine heirship:

Q: Was there personalty that belonged to [Levi] at the time his first wife died, any personal items or furnishings that you were aware of?

A: The only thing I remember standing out in my mind, visiting his church office there at First Baptist, were his biblical commentaries. They were giant books. I was just a little girl and I was overwhelmed with the size of them. And later on, you know, they still resided in the home.

This solitary reference to Levi=s commentaries and Cathy=s general statement in her application that Levi owned A[o]ne half (2) Community property interest in cash, insurance proceeds, household goods and personal effects@ do not change the nature of her suit from one for the recovery of real property. The record and counsel=s statements during oral argument clearly reflect that the parties= main concern is the 1706 East 32nd Street property.

4

Therefore, Cathy=s main incentive in asserting her heirship clearly is to establish her interest in Levi=s homestead at 1706 East 32nd Street in Austin. AThat she also needed to establish her prerequisite heirship status does not detract from or change the nature of the suit from one for the recovery of real property.@ *Id.* Accordingly, the four-year statute of limitation does not bar Cathy=s claim. *See id.*

Cecelia argues that the Texas Supreme Court has previously decided this issue in her favor: AThe Supreme Court concluded in *Little* that they recognized that adopted children have inheritance rights, but the legislative determinations in several arenas dictate that claims for inheritance must be asserted within the statutory limitations periods.@ *See Little v. Smith*, 943 S.W.2d 414, 423 (Tex. 1997). In that case, Smith was adopted shortly after her birth in 1932. *Id.* at 415. Many years later, she began searching for information about her biological parents when her son was diagnosed with a tumor. *Id.* In 1989, Smith discovered that Thelma Little, her biological mother, had predeceased her, and that Lula Little, Smith=s biological grandmother, had died in 1982, leaving a will that possibly entitled Smith to inherit a portion of the estate. *Id.* at 416. In 1991, she brought an action demanding an interest in the assets of the estate. *Id.* The supreme court framed the issue as a determination of the discovery rule=s application: AWe must determine whether the discovery rule should apply in cases of this nature to extend, perhaps for decades, the period of time within which adoptees may bring suit to assert rights of inheritance.@ *Id.* at 417.

The supreme court=s discussion in *Little* of the discovery rule=s application is inapplicable to the present case. *See York*, 872 S.W.2d at 16. Further, the policy considerations outlined in *Little* do not require the same result in this case: AThere are competing interests under various Texas statutes at issue in this case: (1) the right of adoptees to inherit from or through their

**5**

natural parents, (2) the confidentiality of the identities of birth parents and their families, and (3) the need for finality of probate proceedings.@ *Little*, 943 S.W.2d at 417. None of those considerations applies here. In *Little*, an adoptee attempted to establish her right to inherit from her biological grandmother; Cathy seeks to inherit from her adopted father who reared her. The legislature=s articulated interest in protecting the confidentiality of the identities of birth parents and their familiesCthe dispositive policy consideration in *Little*Cis not a factor in the present case. *See id.* at 419-20.

Cecelia further contends that *Cantu v. Sarpenter*, 937 S.W.2d 550 (Tex. App.CSan Antonio 1996, writ denied), compels a different result in this case. *Cantu* involved a scenario in which the decedent=s widow conveyed a tract of land, previously owned by her husband, to the Whites in 1986, receiving valuable consideration in return. 937 S.W.2d at 551-52. In 1991 and 1993, decedent=s illegitimate children sought to establish their rights to inherit from decedent=s estate, including the land deeded to the Whites. *Id.* at 552. The court of appeals balanced appellees= right to establish heirship with the State=s interest in the orderly administration of estates and the validity of property ownership. *Id.* The court held that appellees= claims were barred because A[i]n weighing the state=s interest in protecting clear title and preserving the effective administration of estates, we find that there must be some limits put on those making an heirship claim.@ *Id.* at 553.

In *Cantu*, the apparently good faith sale of the estate created a property interest in the Whites, 937 S.W.2d at 552-52; the record in the present case does not reflect that any part of the real or personal property has been conveyed so as to create a property interest in a third party. Further, the record reflects that there has been no administration of Levi=s estate. Therefore, the policy

**6**

considerations underlying the court of appeals=s decision in *Cantu* do not apply to the present case. *See id.*

Both *Little* and *Cantu* are distinguishable from this case. *Little* involves the policy consideration of protecting the confidentiality of the identities of birth parents and their families. *Cantu* involves a situation in which a child born out of wedlock must first establish a relationship with the decedent in order to prove a right to heirship. In this case, Cathy had only to show that she had a legally established relationship which Levi=s heirs disputed after Sally=s death. As Levi=s surviving spouse, Sally had a homestead right in their property. Until Sally=s death, Cathy had no need to assert her legal interest.

We believe that the present case is more closely analogous to *York*. *See* 872 S.W.2d at 13. In that case, appellant brought suit to establish that she was the daughter of the decedent and therefore entitled to inherit her father=s interest in a 41.5-acre tract. *Id.* at 14. Appellee moved for summary judgment on three grounds, one of which was that appellant=s claim was barred by limitations. *Id.* The court of appeals concluded that because appellant=s action was for the recovery of real property, the four-year residual limitations period of Texas Civil Practice and Remedies Code section 16.051 did not bar her claim. *Id.* at 16. Similarly, because the nature of Cathy=s claim is for the recovery of real property, Cecelia=s first issue is overruled.

### Application to Determine Heirship

In her second issue, Cecelia challenges the legal and factual sufficiency of the evidence to support the probate court=s finding that Cathy Acomplied with and met all matters and proof required to support her Application to Determine Heirship.@ We attach to findings of fact the same

**7**

weight that we attach to a jury=s verdict upon jury questions. *Lawyers Surety Corp. v. Larson*, 869 S.W.2d 649, 653 (Tex. App.CAustin 1994, writ denied). Findings of fact are reviewed for legal and factual sufficiency of the evidence by the same standards used to review jury findings. *Westech Eng=g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 195 (Tex. App.CAustin 1992, no writ).

In a legal sufficiency review, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party=s favor. *Associated Indem. Corp. v. CAT Contracting, Inc*., 964 S.W.2d 276, 285-86 (Tex. 1998); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994); *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex. 1990). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex. 1970); *In re King=s Estate*, 244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Crye*, 907 S.W.2d at 499; *Moriel*, 879 S.W.2d at 25. When reviewing the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if the evidence is so weak or so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Cecelia contends that the Shaw affidavit Awhich has been on record in Travis County for sixteen years constitutes prima facie evidence that [Cathy] was not born to or adopted by the

**8**

marriage of [Levi] and Clara Louise (Mackey) Roberts.@ In support of this contention, Cecelia cites section 52 of the probate code:

> A statement of facts concerning the family history, genealogy, marital status, or the identity of the heirs of a decedent shall be received in a proceeding to declare heirship . . . as prima facie evidence of the facts therein stated, if the statement is contained in . . . an affidavit . . . , and if the affidavit . . . has been of record for five years or more in the deed records of any county in this state in which such real or personal property is located at the time the suit is instituted . . . .

Tex. Prob. Code Ann. ' 52(a) (West Supp. 2002). Cecelia argues that the Shaw affidavit created a presumption that Cathy is not the child of Levi. She further contends that Cathy=s contradictory pleadings and proof were insufficient to rebut that presumption. Cecelia emphasizes that while Cathy=s application alleges that she was Aborn to@Levi=s first marriage, the evidence presented at the hearing on her application indicates that she was adopted.

Cathy responds that whether she was born to or adopted by Levi is irrelevant to the judgment rendered. We agree. Section 40 of the probate code provides that an adopted child shall inherit from adoptive parents as if he or she were a natural child:

> For purposes of inheritance under the laws of descent and distribution, an adopted child shall be regarded as the child of the parent or parents by adoption, such adopted child and its descendants inheriting from and through the parent or parents by adoption and their kin the same as if such child were the natural child of such parent or parents by adoption . . . .

Tex. Prob. Code Ann. ' 40 (West Supp. 2002). Because the probate code clearly treats adopted children as natural children for purposes of inheritance, we hold that Cathy=s statement in her

**9**

application that she was Aborn to@Levi=s first marriage does not contradict or undermine the evidence presented at the hearing that she was adopted. The issue to be proven was whether she was his child.

The Shaw affidavit constituted prima facie evidence, subject to rebuttal. At the hearing on Cathy=s application, Cathy introduced her birth certificate reflecting Levi and Clara as her parents. Cora Robinson, Cathy=s biological mother, unequivocally testified that she gave Cathy up for adoption and that Levi and Clara, Cora=s sister, legally adopted Cathy. In light of this uncontradicted testimony, we hold that reasonable minds could arrive at the finding that Cathy fully complied with and met all matters and proof required to support her application. Further, we cannot say that the evidence to support the probate court=s finding is so weak or so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, Cecelia=s second issue is overruled.

*Fingerprinting*

In her third issue, Cecelia contends that the probate court abused its discretion by denying her request that Cathy be fingerprinted in order to be certain of her identity.[4] A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to

---

[4] Cathy contends that Cecelia has failed to preserve this error for appeal by failing to specify the grounds for and obtain a ruling on her request. *See* Tex. R. App. P. 33.1(a). The record reflects that Cecelia made this request both in her first amended answer and at the hearing on Cathy=s application and that the court was aware of the grounds for the request. Although he did not expressly rule on her request, we will address the merits of Cecelia=s complaint.

any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

> In her first amended answer, Cecelia requested

> the Court to require [Cathy] to prove such allegations by sufficient evidence including fingerprinting to prove positively that [Cathy] is indeed who she claims to be considering the records (which are attached as Exhibit A to this First Amended Answer and fully incorporated herein by reference) which show that Cathy Jo (Roberts) Jackson is an alias of Gladys Lovone Thomas, a person that has two forgery convictions and ten other convictions.

At the hearing on Cathy=s application, Cecelia again requested that Cathy be fingerprinted. The court responded that her identity had been certified by the Department of Public Safety:

> Counselor, I=m a little confused by that statement. Because what I see on the very first page of the Department of Public Safety certification is that Texas DPS No. 01968136, and then to the side of that is Jackson, Cathy Jo, also known as Cathy Roberts, DOB, 6-4-55. And what they=re certifying this is her, Cathy Jo Jackson A/K/A Roberts= criminal record . . . . And I do understand that youCthe very first thing that was asked was for a query on Cathy Jo Jackson. And they came backCthere is noCand with sex, female, race, all races, and they come back and say there is no identification records that match that. And then they go down a little bit further on the same pageCI=m on Page 2 of their packet. They do mention a Cathy JoCCathy Jo Jackson, black female, 5=, 4@, 159, black hair and with the number 01968136 . . . . ButCand all these aliasesCand they do list Gladys Lavone Thomas, which I don=t dispute that that=s one of her aliases. But, you know, according to the DPS this is the record of this Cathy Jo Jackson orCexcuse meCCathy Jo Jackson also known as Roberts, Cathy. Anyway, it=s what it is, it=s what it says it is. And your interpretation of it varies a little bit from mine. I think it=sCthe person that=s in jail is this person, and I think she=s Cathy Roberts or Cathy Jo Jackson.

**11**

In light of the court=s reliance on Cathy=s identification as certified by the Department of Public Safety, we cannot say that he acted in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles.[5]  Because Cecelia has failed to show that the court abused its discretion by denying her request to have Cathy fingerprinted, her third issue is overruled.

***Sufficiency of the Evidence***

In her fourth issue, Cecelia contends that the evidence is both legally and factually insufficient to support the probate court=s judgment that Cathy is Levi=s adopted child.  In support of this contention, Cecelia argues that the testimony presented at the hearing on Cathy=s application is clearly counter to the finding that Cathy was adopted by Levi.  Cecelia also emphasizes that Cathy=s birth certificate states that Levi is her father and Clara is her mother.

In light of the legal and factual sufficiency standards set out above, the record reflects both legally and factually sufficient evidence to support the probate court=s finding that Cathy is Levi=s child.  Cora Lee Mackey Robinson, Cathy=s biological mother, testified that she gave Cathy up for adoption to Levi and Clara.  Cathy presented a birth certificate listing Levi and Clara as parents.[6]

_____

[5]  Further, appellant=s complaint is somewhat circular.  Assuming Cathy were fingerprinted, Cecelia does not say to what evidence the fingerprints could be matched other than the DPS records, or what that would prove.  She appears to suggest that the DPS records show that Cathy Jo (Roberts) Jackson is an alias of Gladys Lavone Thomas, and that Cathy did not present evidence that she is Cathy Jo (Roberts) Jackson and not Gladys Lavone Thomas.  We fail to see what Cathy=s fingerprints would prove.  Cathy does not dispute that she is the person with the criminal record, and the court so found.

[6]  As a matter of course, following adoption Texas issues a new birth certificate on request listing the adoptive parents= names.  *See* Tex. Fam. Code Ann. ' 108.009 (West Supp. 2002).

Contrary to Cecelia=s contention, Cathy=s birth certificate constitutes evidence that she is Levi=s child. Because the evidence is both legally and factually sufficient to support the probate court=s judgment that Cathy is Levi=s adopted child, Cecelia=s fourth issue is overruled.

***Void Judgment***

In her fifth and final issue, Cecelia contends that the court=s Afinding that [Cathy] was adopted, when she plead [sic] that she was born to is void as a mater of law.@ This issue is a restatement of Cecelia=s second issue, and we held that because the probate code regards adopted children as natural children for purposes of inheritance, Cathy=s statement in her application that she was Aborn to@ Levi=s first marriage is not contradicted by the evidence that she was adopted by Levi. Accordingly, her fifth issue is overruled.

## CONCLUSION

We overrule all of Cecelia=s complaints on appeal. We therefore affirm the judgment of the probate court.

_____

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: July 26, 2002

Do Not Publish