**INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,**
Appellant,

v.

**Hazel STELHIK, Appellee.**

No. 2–98–052–CV.

Court of Appeals of Texas, Fort Worth.

July 1, 1999.

Rehearing Overruled Aug. 5, 1999.

Richard Levy, Texas AFL–CIO Legal Director, of Counsel Provost & Umphrey, L.L.P., Austin, for appellant.

David L. Brenner, Kristin L. Gustavson, Burns Anderson Jury & Brenner, Austin, for appellee.

Panel B: DAUPHINOT, RICHARDS, and HOLMAN, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

### INTRODUCTION

Appellant Insurance Company of the State of Pennsylvania (ICP) appeals from the trial court's order granting summary judgment in favor of Appellee Hazel Stelhik (Stelhik). In this workers' compensation case, we must decide whether wages from concurrent employment may be considered in calculating an injured worker's average weekly wage. Because we hold that, under the facts of this case, Stelhik's wages from her concurrent employment should be considered in calculating her average weekly wage, we affirm the trial court's grant of summary judgment in favor of Stelhik.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Stelhik is a fleet service clerk for AMR Corporation, American Airlines, Inc. (American). ICP is American's workers' compensation insurance carrier. Stelhik is also a member of, and union representative for, the Transport Workers Union of America (TWU). In her capacity as union representative, she assists workers in obtaining benefits bargained for in their contracts and assists in resolving disputes with American. An agreement between American and the TWU allows American employees to take leave from American to work for the TWU on union business without detriment to their employee benefits at American. When taking such leave, the employee is paid by the TWU.

On September 30, 1995, Stelhik sustained an injury while working at American. The parties do not dispute that this injury is compensable. The parties disagree only as to which wages should be considered in calculating Stelhik's average weekly wage. In calculating an injured worker's average weekly wage, the Texas Workers' Compensation Commission (TWCC) looks at the worker's wages from the thirteen weeks prior to the employee's injury.[1] During the thirteen weeks prior to her injury, Stelhik was granted union leave at various times and worked for both American and the TWU. Stelhik argues that wages from both American and her concurrent TWU employment should be considered in calculating her average weekly wage. Conversely, ICP argues that her wages from the TWU should not be considered. The parties agree that Stelhik's average weekly wage would be $398.00 if only the American wages are considered but would be $620.89 if wages from both American and the TWU are considered.

The TWCC benefit review officer recommended a finding that Stelhik's wages from both American and the TWU should be considered in calculating her average weekly wage. After a contested case hearing, the hearing officer also concluded that Stelhik's union replacement pay from the TWU should be included and that her average weekly wage is $620.89. ICP requested a review of the hearing officer's decision before a TWCC appeals panel. The appeals panel reversed the hearing officer's decision and determined that Stelhik's average weekly wage is $398.00, thus

---

**1.** *See* Tex. Lab.Code Ann. § 408.041 (Vernon 1996).

concluding that her TWU wages could not be considered.

Stelhik sought judicial review in district court of the appeals panel's determination of her average weekly wage. Both parties filed motions for summary judgment. After a hearing, the trial court granted Stelhik's motion and denied ICP's motion. The trial court found, as a matter of law, that the TWCC incorrectly excluded Stelhik's TWU wages and that her correct average weekly wage is $620.89.

## STANDARD OF REVIEW

The standards for reviewing a motion for summary judgment are well established. Stelhik, as the movant, has the burden of showing that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law.[2] Because the trial court rendered summary judgment against ICP, we consider the facts in the light most favorable to ICP.[3]

## DISCUSSION

In its sole issue on appeal, ICP asks us to determine whether, under section 408.041 of the Texas Workers' Compensation Act (the Act), wages from concurrent employment may be used in calculating an injured worker's average weekly wage. ICP argues that section 408.041 does not contemplate the use of wages from concurrent employment in calculating the average weekly wage. Our research has not revealed any Texas cases deciding this issue. This case therefore presents an issue of first impression.

Section 408.041(a) of the Act states,

Except as otherwise provided by this subtitle, the average weekly wage of an employee who has worked for the employer for at least the 13 consecutive weeks immediately preceding an injury is computed by dividing the sum of the wages paid in the 13 consecutive weeks immediately preceding the date of the injury by 13.[4]

The Act defines "wages" as "all forms of remuneration payable for a given period to an employee for personal services."[5]

In interpreting a statute, we must "diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy."[6] ICP asserts that the difference between section 408.041 and the law in effect before 1989 "clearly indicates the Legislature's intent to change the way in which average weekly wage is computed." Before the 1989 enactment of the Act, a worker's average weekly wage was calculated as follows:

If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, for at least two hundred ten (210) days of the year immediately preceding the injury, his average weekly wage shall consist of three hundred (300) times the average daily wage or salary which he shall have earned during the days that he actually worked in such year, divided by fifty-two (52).[7]

ICP contends that the deletion of the phrase "whether for the same employer or not" in the new law indicates the legislature's intent to preclude the consideration of wages from more than one employer in calculating the average weekly wage. We, however, note that the language of section 408.041 does not expressly exclude consideration of concurrent employment, nor is there any legislative history indicating the

2. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996).

3. *See Little v. Smith*, 943 S.W.2d 414, 415 (Tex.1997).

4. TEX. LAB.CODE ANN. § 408.041(a) (Vernon 1996).

5. *Id.* § 401.011(43).

6. TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998).

7. Act of May 12, 1959, 56th Leg., R.S., ch. 355, § 1, 1959 Tex. Gen. Laws 778, 779, *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(15), 1989 Tex. Gen. Laws 1, 115.

legislature's intent to exclude consideration of concurrent employment.

■ ICP further argues that we should defer to the TWCC appeals panels' decisions holding that wages from concurrent employment may not be considered and that only wages from the employer in whose service the injury was sustained may be considered. Questions of statutory interpretation, however, are questions of law that are not entitled to a presumption of validity.[8] We therefore are not bound by the appeals panels' construction of section 408.041.[9] "Even though not binding upon the courts, an interpretation of a regulation by the agency charged with its enforcement is entitled to weight."[10]

■ Just as the appeals panels' decisions are entitled to weight, we should give weight to the TWCC executive director's interpretation of this statute, as he is charged with the enforcement of the Act.[11] In a March 15, 1993 memorandum from Todd K. Brown, executive director of the TWCC, to Danny Vivian of the TWCC Victoria Field Office, Brown states,

> In calculating the wages of injured employees who are involved in negotiations with their employer for a labor union, the replacement wages paid to the employee by the union should be counted towards the employee's average weekly wage if the employer allows the employee to participate in such activities without loss of benefits. This is based on the concept that the employer is recognizing that the employee's activities are related to the employment and a benefit to the employer. In addition, because the employee is not working part-time as a regular course of conduct, the employee is entitled to have the wages counted in the calculation of average weekly wage.

The benefit review officer relied on the memorandum, concluding that it "clearly shows the use of union replacement pay has been previously addressed and determined to be acceptable by the Commission." The hearing officer at the contested case hearing also relied on the memorandum in deciding that Stelhik's TWU wages should be considered. The appeals panel, however, concluded that the memorandum was written in response to a specific question that arose in one field office, that there was no evidence that the TWCC had issued an advisory opinion on the subject, and that TWCC rules do not directly address the issue.

ICP argues that the memorandum is not controlling because "it applies only to 'negotiations with their employer for a labor union' which is not involved in this case." In her affidavit, Stelhik stated, "In my capacity as union representative, I assist workers in obtaining benefits bargained for in the contract and assist in resolving any disputes with the company or its representative." Stelhik's union activities involve negotiations with American for the TWU. We conclude that Stelhik's TWU employment is the same type of activity addressed in the memorandum.

ICP further argues that the memorandum is not controlling because it does not address the facts developed at the contested case hearing, because it does not rise to the level of a TWCC rule, and because it appears to be inconsistent with appeals panels' decisions. We disagree. The mere fact that the memorandum may be inconsistent with appeals panels' decisions does not mean that the memorandum is not entitled to some weight. Likewise, even if the memorandum may not rise to the level of a TWCC rule, it conveys the construction of section 408.041 by

8. *See Hightower v. State Comm'r of Educ.*, 778 S.W.2d 595, 597 (Tex.App.—Austin 1989, no writ).

9. *See Sonic Drive–In, Inc. v. Hernandez*, 797 S.W.2d 254, 256 (Tex.App.—Corpus Christi 1990, writ denied).

10. *Id.*

11. *See* Tex. Lab.Code Ann. §§ 402.041, .042 (Vernon 1996) (providing that executive director is executive officer and administrative head of the TWCC and setting forth general powers and duties of executive director).

the administrative agency charged with its enforcement and therefore is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute.[12] Because the executive director's construction is reasonable and does not contradict the plain language of section 408.041, it is entitled to serious consideration.

ICP seems to assert that the memorandum does not address the type of facts contained in the case before us. We, however, conclude that this is exactly the type of situation contemplated by the memorandum. The executive director stated that the replacement wages paid to the employee by the union should be considered in calculating the average weekly wage *if the employer allows the employee to participate in such activities without loss of benefits.*

As summary judgment proof, Stelhik provided the affidavit of Joseph Gordon, the president of Local # 513 of the TWU. In his affidavit, Gordon states that, pursuant to the collective bargaining agreement between American and the TWU and pursuant to the American regulations,

> employees who are union representatives are permitted to take leave from [American] in order to conduct union business *without a loss to their [American] benefits* such as seniority, sick leave, vacation time, credit union privileges and full-time status. Worker-representatives who are [on] leave from [American] in order to serve the TWU are paid at a rate agreed to by [American] and the TWU during collective bargaining. . . .
>
> In regard to full-time status, Hazel Stelhik at all times relevant to this case remained a full-time employee of American Airlines. However, in the weeks preceding her injury, Stelhik worked less than the required forty hours for [American] due to her service to the

TWU. Nonetheless, Stelhik maintained her full-time status because the hours spent on union leave were included as hours worked for [American].

> An employee's service to the TWU is subject to his or her continued employment with [American]. An employee terminated from [American] would no longer serve as a TWU worker-representative. [Emphasis added.]

Stelhik also offered, as summary judgment proof, the American regulations and the collective bargaining agreement between American and the TWU. The regulations indicate that an American employee who takes a leave of absence to work for the TWU continues to accrue seniority, paid sick time, and vacation time; may suspend, reduce, or purchase life, health, and disability insurance through American; and maintains his or her travel and credit union privileges. The collective bargaining agreement requires an employee to submit a written request and get permission to take a leave of absence for union business. Although the agreement is silent as to whether wages from concurrent TWU employment will be considered in calculating an employee's average weekly wage, it does provide that an employee on a leave of absence for union business continues to accrue seniority.

## CONCLUSION

■ The evidence before us clearly indicates that, during the thirteen weeks prior to her injury, Stelhik maintained her full-time status at American without the loss of any benefits, even though she was working for both American and the TWU. We recognize that the facts of this case are unique. Although Stelhik did work for two employers during the relevant thirteen weeks, this is not the situation of an employee working two part-time jobs for two unrelated employers. Stelhik's TWU em-

---

12. *See Dodd v. Meno,* 870 S.W.2d 4, 7 (Tex. 1994) (stating court was not inclined to reverse Commissioner of Education's reasonable determination in area where he possess-es considerable authority and expertise); *see also Moses v. Fort Worth Indep. Sch. Dist.,* 977 S.W.2d 851, 853 (Tex.App.—Fort Worth 1998, no pet.).

ployment is contingent on her being an American employee. And Stelhik's service to the TWU is related to her American employment and is a benefit to American. Furthermore, we conclude that not allowing union replacement wages to be considered in calculating an employee's average weekly wage would be detrimental to the collective bargaining process.

We hold that, based on the unique facts of this case, Stelhik's wages from her concurrent employment with the TWU should be considered in calculating her average weekly wage. Accordingly, we hold as a matter of law that Stelhik's average weekly wage is $620.89. We affirm the trial court's grant of summary judgment in favor of Stelhik.