NO. 07-05-0272-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MAY 8, 2007

_____

CATHERINE GRAEME STEWART, APPELLANT

V.

DALE H. JOHNSON AND MCWHORTER, COBB & JOHNSON, L.L.P., APPELLEES

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-518,896; HONORABLE MACKEY K. HANCOCK, JUDGE

_____

Before CAMPBELL and PIRTLE, JJ., and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Appellant Catherine Graeme Stewart appeals the summary judgment granted appellees Dale H. Johnson and McWhorter, Cobb & Johnson, L.L.P., in her suit against them alleging fraud.[2] We affirm the trial court's judgment.

---

[1] John T. Boyd, Chief Justice (Ret.) Seventh Court of Appeals, sitting by assignment.

[2] For simplicity, we refer to appellees as "Johnson." Stewart asserts no claim against the law firm McWhorter, Cobb & Johnson, L.L.P., other than its vicarious liability for the actions of its member Johnson.

Stewart signed a written "exchange agreement" with her father Malcolm G. Stewart, dated January 1, 1982,[3] by which she agreed to convey to him her undivided interest in a ranch in Colorado in exchange for his conveyance to her of some 1100 acres of land in Alamosa County, Colorado, which they called the "Uracca" property.

The exchange agreement also called for Stewart to "cancel" two promissory notes her father had made. One note was in the original principal amount of $132,867.88 and was payable to Stewart. The second note was in the original principal amount of $147,166.18. The exchange agreement recited that the second note also was payable to Stewart, which was not precisely correct. The $147,166.18 note actually was payable to American State Bank in Lubbock as trustee of the trust for Stewart's benefit created under the will of her late grandmother.

The deed from Stewart's father conveying the Uracca property to Stewart was executed in March 1982 and recorded in Alamosa County. A year later, American State Bank sent Stewart a letter dated March 23, 1983, saying that the bank had received a copy of the exchange agreement and pointing out that Stewart had no authority to "negotiate any transactions" concerning assets held in the trust under her grandmother's will. The letter said the bank had "advised you and your father during the year 1982 of the necessary steps that would have to be taken in order for us to exchange your father's note for land located in Colorado." The letter went on to describe the bank's requirements for such an exchange, which included an appraisal of the land to be substituted for the note.

_____

[3] The exchange agreement, although dated January 1, 1982, also is sometimes referred to in the summary judgment record as the "1981 agreement."

2

In December 1983, Stewart, her father and American State Bank, as trustee, executed a Warranty Deed and Agreement, which recited the agreement between Stewart and her father for the conveyance of the Uracca property to her, and for the cancellation of the $147,166.18 note. The document also described the March 1982 conveyance of the Uracca property to Stewart, and recited that the three parties had agreed the Uracca property should be conveyed to the bank as trustee in consideration of cancellation of the note. By the document, both the conveyance of the Uracca property to the bank as trustee and the cancellation of the note were accomplished.

The Uracca property was sold in 1988 for $200,000. The accounting for the sale recognized that both Stewart and the trustee had exchanged assets for the property, and the sales proceeds were divided between them. In her deposition testimony in the summary judgment record, Stewart testified that from a conversation with her accountant following the sale, she came for the first time to a full understanding of the consequences of the 1982 exchange agreement with her father. She testified she concluded her father had lied to her about the agreement.

Stewart testified that, following the revelation of her father's malfeasance, she began to investigate the transaction and contemplate action against her father. She said that, as a part of her investigation, in the spring of 1989, she telephoned Dale Johnson, who she knew as a long-time friend of her family and as the lawyer who probated her grandmother's estate. According to Stewart,[4] she told Johnson what she had learned

---

[4] The summary judgment record contains no testimony from either defendant about the events Stewart described.

3

about the effect of the exchange agreement, and asked him if she had "any legal recourse" against her father. Stewart said Johnson told her "that it was too late – I had signed an agreement in '81, it was now '89, it was too late to do anything and he said that he knew nothing about any of this."

Stewart testified she took no further action against her father. In 1994, when Stewart reached the age of 45, the trust under her grandmother's will terminated. Stewart's father died in 1997, and she was not a beneficiary under his will. Stewart testified she was disappointed over the terms of her father's will, and she resumed her investigation into her business dealings with her father.

During this time, Stewart talked to a number of attorneys. In the summer of 1998, Stewart went to American State Bank and reviewed its files concerning the trust under her grandmother's will. She testified she found correspondence between Johnson and her father in the bank's files, and concluded that Johnson had greater involvement with the bank's transactions as trustee than he had disclosed in their 1989 telephone conversation.[5]

Stewart filed her suit against Johnson and his law firm in August 2002, alleging a cause of action for fraud, based on their 1989 telephone conversation.[6] She alleged

---

[5] Stewart's pleadings alleged that, among other things, she learned from the bank's records that Johnson "had been involved in this matter as the attorney for her father and American State Bank since at least [a date in October 1982]." In her deposition, Stewart testified that, so far as she knew, Johnson had no involvement in the preparation of the exchange agreement.

[6] On appeal, Stewart's brief asserts for the first time that her suit also alleged a breach of fiduciary duty. We agree with Johnson that Stewart's pleadings cannot be read to claim that Johnson owed her a fiduciary duty. Instead, she alleged her father owed her

Johnson made false representations to her during that conversation, and that she relied on the misrepresentations. Her pleadings alleged she was damaged through her reliance on Johnson's misrepresentations because they caused her to take no action against her father. According to her pleadings, the action Stewart would have taken against her father, which she refers to as "the underlying allegations against her father," also would have been based on fraud.[7]

Johnson's traditional motion for summary judgment asserted that its summary judgment evidence conclusively negated one or more elements of Stewart's fraud claim against him, and conclusively established that the claim was barred by limitations.

After Johnson filed his motion for summary judgment, Stewart filed a supplemental petition and a response to the summary judgment motion. The supplemental petition asserted that the accrual of her cause of action was deferred by fraudulent concealment and equitable estoppel, and asserted the application of the discovery rule.

Because Stewart's claimed injury from Johnson's 1989 statements is the loss of her opportunity to pursue a lawsuit for fraud against her father,[8] evaluation of the parties'

_____

a fiduciary duty.

[7] Appellant also makes reference to claims against her father for breach of fiduciary duty. As we later discuss, our disposition of her appeal would be the same whether her unpursued claim against her father would have been based on fraud or breach of fiduciary duty.

[8] In addition to her complaint that Johnson falsely told her it was "too late" to bring a fraud claim against her father, Stewart complains that Johnson's statement he "knew nothing" about fraudulent conduct by her father was false, and complains of Johnson's failure to disclose he had a conflict of interest because of his representation of her father

contentions requires a "case within a case" analysis similar to that used in legal malpractice cases. *See, e.g., Schaeffer v. O'Brien*, 39 S.W.3d 719, 720-21 (Tex.App.–Eastland 2001, pet. denied) (applying analysis).[9] *See also Childs v. Haussecker*, 974 S.W.2d 31 (Tex. 1998) (containing similar analysis in legal malpractice case). Johnson argues that summary judgment was proper if the record establishes Stewart had no viable cause of action for fraud against her father in 1989, and we agree.

We review the trial court's grant of summary judgment under the established standards. *See Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003) (stating standard). Accordingly, we will take as true all evidence favorable to Stewart, and indulge every reasonable inference and resolve any doubts in her favor. *Id*. at 215. We may affirm the summary judgment only if the record demonstrates that Johnson met his burden to show that there existed no genuine issue of material fact and he was entitled to judgment as a matter of law. *Id*. at 216.

The parties agree that a material misrepresentation by the defendant is the first element of a cause of action for common-law fraud. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (listing elements). Johnson's motion for summary judgment contended that, beyond dispute, by the spring of 1989 it was too late for Stewart to sue her

---

and American State Bank. The only injury she identifies as arising from her telephone conversation with Johnson, however, is her failure to take action against her father for his fraud.

[9] The summary judgment record contains no expert testimony about Stewart's chances of success in a fraud action brought against her father in 1989. The parties do not address the consequences of the absence of such expert testimony, and we need not consider it.

father for his assertedly fraudulent conduct, because limitations would bar any such suit. Thus, Johnson argued, his claimed statement could not have been a misrepresentation. Stewart's response to the motion for summary judgment reiterated her contention that limitations on her fraud action against her father would have begun to run only when she knew or should have known of his fraudulent conduct.

Where fraud is alleged, Texas law has granted the claimant the benefit of deferring the cause of action until she discovered or should have discovered the fraud. *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (citing *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738, 739 (Tex. 1943)). The court in *Ruebeck* also stated the rule that knowledge of facts that would cause a reasonably prudent person to make inquiry, which if pursued would lead to a discovery of fraud, is in law equivalent to knowledge of the fraud. 176 S.W.2d at 739. *See also Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983) (citing *Ruebeck* and applying same rule in fraudulent concealment context). Stewart's allegations of fraud against her father focus on the 1982 exchange agreement. Her pleadings allege her father induced her to sign the exchange agreement. Her pleadings also allege she "did not understand the ramifications or consequences of [the 1982 exchange] agreement, but trusted the representations made by her father that such an agreement was needed and would be in her best interests." The summary judgment evidence makes clear that the ramification or consequence Stewart claims not to have understood was that the exchange involved the cancellation of her father's notes to her and the trustee.

Johnson argued in his motion for summary judgment that limitations would have begun to run on Stewart's fraud claim against her father at the time she executed the exchange agreement in 1982 or, at the latest, when she executed the warranty deed to American State Bank as trustee in December 1983. The motion pointed out that both documents expressly provided for the forgiveness of the $147,166.18 note.[10] Stewart acknowledged in her deposition testimony that she would have understood those provisions if she had read the documents, but said she did not read them. At oral argument, Stewart's counsel pointed us to this court's opinion in *McAdams v. McAdams*, 2000 WL 329578, *7 (Tex.App.–Amarillo March 28, 2000, no pet.) (memo. op.), in which we stated that reliance on a fiduciary's actions may relieve a party from the duty of reading what she signs. Johnson argues the summary judgment record is lacking evidence that, as an adult, Stewart was owed a fiduciary duty by her father. We need not consider that issue, because it is uncontroverted that Stewart both received[11] and read American State Bank's March 1983 letter to her. As noted, the letter made reference to the bank's receipt of a copy of the exchange agreement. As also noted, it discussed the bank's requirements for the transaction by which the note held in trust would be exchanged for Colorado land, and stated that until the requirements were met, the bank was "in no position whatsoever to release your father from liability on said note."

---

[10] Relying on much of the same evidence and making essentially the same argument, Johnson's motion also contended that the summary judgment evidence conclusively negated the injury element of Stewart's fraud claim against him. *See FirstMerit Bank, N.A.*, 52 S.W.3d at 758 (elements of fraud include injury suffered from reliance on false representation).

[11] The certified mail return receipt shows Stewart signed for the letter on March 25, 1983. Stewart testified she had a distinct memory of her receipt of the letter.

8

*Ruebeck* holds that unless the evidence is such that reasonable minds could not differ as to its effect, the question whether a party has exercised diligence in discovering fraud is a question of fact for the jury. 176 S.W.2d at 740. *See also Childs*, 974 S.W.2d at 44 (stating similar rule in discovery rule case). Even viewing the evidence in Stewart's favor as required in this summary judgment proceeding, we find that reasonable minds could not differ as to the effect of the information in the bank's March 1983 letter on Stewart's appreciation that the exchange agreement she signed with her father involved the release of his indebtedness under the promissory notes. As of a date no later than her receipt of the bank's letter, Stewart was in possession of facts that would have caused a reasonably prudent person to make inquiry, which if pursued would lead to her discovery of the complained-of conduct of her father, with regard to both notes.

The same result obtains if Stewart's claim against her father is based on breach of a fiduciary duty. Limitations begins to run on such a claim when the claimant knows or should have known of facts that in the exercise of reasonable diligence would have led to discovery of the wrongful act. *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997) (citing *Slay v. Burnett Trust*, 143. Tex. 621, 187 S.W.2d 377, 394 (Tex. 1945)).

There appears to be no dispute that a four-year statute of limitations would apply to Stewart's claims against her father. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (Vernon 2002) (prescribing four-year limitations period for claims of fraud and breach of fiduciary duty).[12] We find the summary judgment record conclusively shows the statement

_____

[12] *But see Rice v. Louis A. Williams & Assocs., Inc.*, 86 S.W.3d 329, 333 (Tex.App.–Texarkana 2002, no pet.) (discussing authority that a two-year statute of

9

Stewart attributes to Johnson to the effect "that it was too late – I had signed an agreement in '81, it was now '89, it was too late to do anything . . . ." was not a misrepresentation. Because the summary judgment evidence negated an element of her cause of action against Johnson, summary judgment was appropriate. We overrule appellant's second issue.

Our disposition of her second issue makes consideration of Stewart's first and third issues unnecessary. Tex. R. App. P. 47.1. We affirm the trial court's judgment.

James T. Campbell
Justice

---

limitations applied to breach of fiduciary claims before 1999). The result in this case would, of course, not be different if a two-year statute had applied.