IN THE SUPREME COURT OF TEXAS
 
════════════
No. 08-0534
════════════
 
Frost National Bank, Former 
Executor of the Estate of Elena Suess Kenedy, Deceased, and Frost National Bank and Pablo Suess, Trustees of The John G. Kenedy, Jr. Charitable Trust, 
Petitioners,
 
v.
 
Ann M. Fernandez, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Thirteenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued December 
15, 2009
 
 
            
Justice Green delivered the 
opinion of the Court.
 
            
Justice O’Neill and Justice Guzman did not participate in 
the decision.
 
 
            
Believing herself to be the non-marital child of John G. Kenedy, Jr., Ann M. Fernandez has initiated multiple 
proceedings in both district court and statutory probate court to set aside 
decades-old judgments and reopen the estates of Kenedy, his wife, and his sister, and to declare Fernandez 
an heir to those estates. The defendants filed motions for summary judgment in 
the district court arguing numerous grounds, including that because Fernandez’s 
heirship claim was barred by limitations, she could not establish an interest in the 
estates and could not pursue bills of review. The district court granted summary 
judgment against Fernandez in a broadly-worded order that did not specify the 
grounds. The principal issue on appeal is whether the district court had 
jurisdiction to render summary judgment when similar bill of review proceedings 
and applications for determination of heirship were 
pending in the probate court. The court of appeals held that the district court 
lacked subject matter jurisdiction and was required to abate its proceedings 
until the probate court first resolved questions of heirship. We disagree. Fernandez’s pleadings and her direct 
attack on a previous judgment vested the district court with subject matter 
jurisdiction. Moreover, the Texas Probate Code does not authorize a probate 
court to exercise jurisdiction over heirship claims 
when an estate has been closed for decades and the decedent did not die 
intestate. We therefore reverse those parts of the court of appeals’ judgment 
that relate to jurisdiction and abatement. Further, we hold that the discovery 
rule does not apply to inheritance or heirship claims 
by non-marital children, or bill of review claims to set aside probate 
judgments. Because Fernandez’s claims were barred by the applicable statute of 
limitations, we render judgment reinstating the district court’s judgment. In 
light of today’s ruling, we conclude that none of Fernandez’s claims for heirship or inheritance rights to the Kenedy estate remain viable, so we affirm the portion of the 
court of appeals’ judgment that set aside the district court’s anti-suit 
injunction.
I. Facts and Procedural Background
            
John G. Kenedy, Jr., died in 1948. In his 
holographic will, Kenedy left all his “property of 
every character and d[e]scription both personal and 
mixed” to his wife, Elena Suess Kenedy. After Kenedy’s will was 
probated in the County Court of Kenedy County, Humble 
Oil & Refining Company, which leased mineral interests that were part of 
Kenedy’s estate, brought a will construction suit in 
district court to resolve a potential ambiguity regarding whether Kenedy’s will disposed of all Kenedy’s real property (the Humble Oil suit). On 
October 12, 1949,[1] the district court found that all of 
Kenedy’s heirs were before it and held that the will 
did not leave an intestacy but instead passed his interest in any property to 
his wife. The judgment states that “as a matter of law” Kenedy was survived by no children and that “all persons who 
would have inherited any part of the Estate of John G. Kenedy, Jr., deceased, if he had died intestate as to all or 
any part of his estate, are parties to this suit and therefore all necessary and 
interested parties are included among the defendants herein.” Kenedy’s estate was distributed, taxed, and closed in 
1952.[2]
            
Sarita Kenedy East, 
Kenedy’s sister, died in 1961. East’s 1960 will and 
codicils, which left the bulk of East’s estate to The John G. and Marie Stella 
Kenedy Memorial Foundation and contained a residual 
clause leaving any remaining property to the Foundation, were admitted to 
probate later in 1961. After extensive litigation (the Trevino will 
contest), the district court dismissed several contests to the 1960 will and 
codicils. See Trevino v. Turcotte, 564 S.W.2d 682, 690 (Tex. 1978). As a part of that 
litigation, the district court entered a final judgment in 1975 pursuant to a 
settlement agreement as to some of the parties contesting East’s 1960 will. We 
later affirmed the district court’s dismissal judgment, id., and the 
district court then transferred the Trevino will contest back to the 
County Court of Kenedy County for a final accounting 
of East’s estate in 1986. The county court closed East’s estate in 1987.
            
Apart from the contests to East’s will, a temporary administrator of her 
estate had also filed an action to set aside certain inter vivos mineral royalty assignments East had made to the 
Foundation (the Garcia suit). The district court abated this action in 
1964, after the Foundation argued that it would own the property at issue under 
East’s will regardless of the status of the inter vivos transfers, if the Trevino will contest 
failed. After our opinion in Trevino, in September 1978 the district 
court dismissed the Garcia suit with prejudice.
            
Mrs. Kenedy passed away in 1984, leaving a will 
that bequeathed most of her estate to The John G. Kenedy, Jr. Charitable Trust.[3] That will was probated in 1984, the 
estate was closed in late 1987, and Mrs. Kenedy’s 
interest in the real property at issue was distributed to the Trust. The La 
Parra Ranch, which was among Kenedy’s real property 
assets that passed to Mrs. Kenedy, was the primary 
trust asset.[4]
            
Fernandez was born in 1925 to Maria Rowland, who was then unmarried and 
worked for the Kenedy family.[5] For years, Fernandez heard rumors and 
speculation that Kenedy was her father. Fernandez 
alleges that on Mother’s Day of 2000, shortly before her death, Rowland revealed 
Kenedy’s paternity when she told Fernandez’s son, Dr. 
Ray Fernandez, that he bore a resemblance to his grandfather, Kenedy. Fernandez then began engaging in litigation to 
assert her putative right to inherit from the estates of Kenedy, his wife, and East.[6]
            
Fernandez filed multiple lawsuits contesting court orders and probate 
proceedings relating to those estates, and she seeks to reopen the estates and 
set aside distributions of real and personal property that were made decades ago 
in those probate proceedings. Fernandez, who did not receive notice of the suits 
pertaining the estates of Kenedy, his wife, and East, contends that she should have 
been a party to those suits, that the judgments in those cases are not binding 
and should be set aside, and that she is entitled to her intestate share. We 
discuss the relevant underlying proceedings and filings generally in 
chronological order.
            
In October 2001, Fernandez filed her initial suit, a bill of review in 
the County Court of Kenedy County seeking to set aside 
the order probating Kenedy’s will, to reopen Kenedy’s estate, and to be declared Kenedy’s heir.[7] In May 2002, she filed another bill of 
review and application for declaration of heirship in 
Kenedy’s estate in the County Court of Kenedy County. She filed additional bill of review 
proceedings in the County Court of Kenedy County 
relating to Mrs. Kenedy’s estate and East’s estate, 
also seeking a declaration of heirship for these 
estates.
            
Fernandez filed three petitions for bill of review in the district court 
for Kenedy County and Nueces County, seeking to set 
aside the Humble Oil, Trevino, and Garcia judgments. The 
district court judgments in those bill of review cases 
are the subject of appeals currently before us. In May 2002, Fernandez filed the 
first of these bills of review in the 105th District Court of Nueces County 
relating to the Trevino will contest (Trevino bill of review).[8] This suit also sought an accounting and 
distribution of property including the mineral interests in the land once held 
by the Kenedys and East.
            
On June 28, 2002, Judge Guy Herman was appointed to be the statutory 
probate judge over the above-referenced County Court of Kenedy County matters.[9] On November 5, 2002, citing section 5B of 
the Texas Probate Code, Judge Herman transferred to himself and consolidated all 
of the four cases then pending in county court.[10] In the same orders, Judge Herman also 
purported to transfer to himself the cases then pending in district court, 
including the Trevino bill of review.[11]
            
Then, in May 2003, Fernandez filed in district court the other two bills 
of review that are now the subject of pending appeals. Fernandez initiated the 
underlying proceedings in the 105th District Court of Kenedy County with a bill of review to set aside the 1949 
judgment from the Humble Oil will contest suit, arguing that she should 
have been notified of and made a party to the decades-earlier Humble Oil 
proceeding (Humble Oil bill of review).[12] She also filed a bill of review in the 
105th District Court of Nueces County, seeking to set aside the 1978 East 
dismissal order, claiming that, as East’s heir, she should have been notified of 
and made a party to the Garcia royalty suit (Garcia bill of 
review).[13]
            
In August 2003, Fernandez moved to abate the three district court bill of 
review cases, and for Judge Herman to transfer the remaining district court 
cases to himself.[14] The Foundation and Trust filed pleas to 
the jurisdiction challenging the probate court’s jurisdiction to transfer the 
bill of review cases from the district court. See In re The John G. & Marie Stella Kenedy Mem’l Found., 159 
S.W.3d 133, 139 (Tex. App.—Corpus Christi 2004, orig. proceeding). On August 27, 
2003, Judge Herman denied the pleas to the jurisdiction, id., and signed 
a second order purportedly transferring and consolidating the Humble Oil 
and Garcia bill of review district court causes of action into the 
cause number assigned to the related cases. At this point, all three district 
court bill of review cases were purportedly transferred and consolidated by 
Judge Herman.
            
On petition for writ of mandamus, the court of appeals held that because 
there was no estate pending in the probate court, Judge Herman lacked authority 
under section 5B of the Texas Probate Code to transfer the bill of review 
proceedings that were originally filed in district court. Id. at 146. The court of appeals directed Judge Herman 
to vacate his transfer orders relating to the three district court bills of 
review, id., but the record does not show that this has yet 
happened.[15]
            
While that mandamus case was pending in the court of appeals, Fernandez 
sought to exhume Kenedy’s remains pursuant to section 
711.004 of the Texas Health and Safety Code. On June 18, 2004, two days after 
the court of appeals issued its mandamus ruling, Judge Herman concluded that he 
had jurisdiction to consider the exhumation motion. He then granted the motion 
to exhume to allow DNA testing to determine if Kenedy 
is Fernandez’s biological father. After proceedings in the court of appeals and 
a hearing before Judge Herman, an exhumation date was set for July 10, 2004. 
See In re Frost Nat’l Bank, 2004 WL 1505527, at *1 (Tex. App.—Corpus 
Christi July 6, 2004, orig. proceeding) (per curiam) 
(denying petition for writ of mandamus seeking protection from the exhumation 
order). The Foundation and Trust filed petitions for writ of mandamus in this 
Court,[1][6] and we stayed the exhumation 
order.[17]
            
In January 2006, while the exhumation mandamus cases were pending in this 
Court, the Trust and Foundation moved for summary judgment in the Trevino 
and Humble Oil bill of review cases in district court.[18] The Foundation also moved for summary 
judgment in the Garcia bill of review case in May 2006. The motions 
presented various grounds for summary judgment, including Fernandez’s lack of 
standing to pursue the bills of review and expiration of the applicable 
limitations period, both for an heirship determination 
and for the bill of review itself. Among other things, the Trust and Foundation 
argued that these bars precluded Fernandez from establishing a right to inherit 
from Kenedy or East, such that Fernandez could not 
establish a meritorious claim warranting a bill of review.
            
Meanwhile, the Foundation also filed an emergency application for 
temporary restraining order and a request for a permanent injunction in the 
Trevino and Garcia bills of review cases, and the Trust made 
similar filings in the Humble Oil bill of review case. The Trust and 
Foundation argued that Fernandez’s filings in probate court were a continuing 
attempt to circumvent the district court’s jurisdiction. The district court 
issued a temporary restraining order prohibiting Fernandez from proceeding with 
a motion she had filed in probate court, which sought to reopen Kenedy’s estate and to have the bill of review proceedings 
transferred to the probate court and abated in the district court. Fernandez did 
not seek appellate court relief from that order.
            
The action in the district court proceeded. In March 2006, in the 
Humble Oil and Trevino bills of review, the district court denied 
Fernandez’s motion to abate and denied a motion to transfer. Finally, on March 
27, 2006, the district court rendered summary judgment for the Trust and 
Foundation without specifying the grounds in the Trevino and Humble 
Oil bill of review cases.
            
On April 12, 2006, the district court issued permanent anti-suit 
injunctions in those two cases, enjoining Fernandez from taking actions 
inconsistent with the district court’s judgment in the probate court or any 
other court, including any attempt to reopen the estates, establish a right to 
inherit from the estates, set aside the wills, or recover an interest in 
property distributed from the estates. The district court issued an order on 
April 25, 2006 that incorporated both the March 27 summary judgment and the 
April 12 injunctive relief. Fernandez appealed both the summary judgment and the 
anti-suit injunction in those two cases.
            
The district court also rendered summary judgment for the Foundation in 
the Garcia bill of review case on June 22, 2006.[19] The same day, as it had in the other two 
cases, the district court issued a permanent anti-suit injunction in this case. 
Fernandez appealed only the anti-suit injunction in the Garcia bill of 
review case.
            
Turning to the Humble Oil bill of review, the instant case before 
us, the court of appeals reversed, concluding that the probate court had 
dominant jurisdiction over the question of Fernandez’s heirship and whether she had an interest in Kenedy’s estate. 267 S.W.3d 75, 81–82 (Tex. App.—Corpus 
Christi 2008, pet. granted). Holding that abatement was required, the court 
remanded the case to the district court with instructions to abate the petition 
until the probate court resolves Fernandez’s heirship 
application. Id. at 85. The court of appeals 
also reversed the anti-suit injunction and rendered judgment against the Trust 
on its request for injunctive relief. Id. The Trust appealed, and we 
granted the petition for review. 53 Tex. Sup. Ct. J. 15 
(Oct. 23, 2009).
            
On the Trevino bill of review, the court of appeals also reversed, 
again concluding that the probate court had dominant jurisdiction and remanding 
to the district court for abatement. Fernandez 
v. The John G. & Marie Stella Kenedy 
Mem’l Found., ___ S.W.3d ___, ___ (Tex. 
App.—Corpus Christi 2008, pet. granted) (mem. op.). As 
in Humble Oil, the court of appeals reversed the anti-suit injunction and 
rendered judgment against the Foundation on its request for injunctive relief. 
Id. at ___. The Foundation appealed, and we 
granted that petition for review. 53 Tex. Sup. Ct. J. 
15 (Oct. 23, 2009).
            
On the Garcia bill of review, the court of appeals again reversed, 
this time concluding only that the district court acted improperly by entering 
an anti-suit injunction. Fernandez v. The 
John G. & Marie Stella Kenedy Found., ___ 
S.W.3d ___, ___ (Tex. App.—Corpus Christi 2008, pet. granted) (mem. op.). Because Fernandez did not appeal the summary 
judgment in this case, the court of appeals did not remand the case. Instead, 
the court of appeals reversed the anti-suit injunction and rendered judgment 
against the Foundation on its request for injunctive relief. Id. at ___. The Foundation appealed, and we granted 
that petition for review. 53 Tex. Sup. Ct. J. 15 (Oct. 
23, 2009).
II. Summary Judgment
            
The Trust first argues that the district court had subject matter 
jurisdiction to render judgment that Fernandez take nothing in her bill of 
review suit, and that the court of appeals erroneously held that the district 
court must abate its bill of review proceedings to allow the probate court to 
determine heirship. “Whether a court has subject 
matter jurisdiction is a question of law.” Tex. Dep’t of Parks & Wildlife 
v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004) (citing Tex. Natural Res. 
Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 855 
(Tex. 2002)). “Whether a pleader has alleged facts that affirmatively 
demonstrate a trial court’s subject matter jurisdiction is a question of law 
reviewed de novo.” Id.
A. Jurisdiction
1. Fernandez’s Pleadings
            
The Trust contends that Fernandez’s pleading of facts supportive of 
standing vested the district court with subject matter jurisdiction over the 
Humble Oil bill of review case. We agree. Inherent in a court’s 
jurisdiction is the authority to determine whether it can exercise subject 
matter jurisdiction over the case, including determining standing. See 
Houston Mun. Employees Pension 
Sys. v. Ferrell, 248 S.W.3d 151, 158 (Tex. 2007); Camacho v. Samaniego, 831 S.W.2d 804, 809 (Tex. 1992). 
Standing, which focuses on who may bring an action, is a prerequisite to 
subject matter jurisdiction. M.D. Anderson Cancer Ctr. v. 
Novak, 52 S.W.3d 704, 708 (Tex. 2001). To have standing to pursue a 
bill of review, a person generally must have been a party to the prior judgment 
or have had a then-existing interest or right that was 
prejudiced by the prior judgment. See, e.g., 
Rodriguez ex rel. Rodriguez v. EMC Mortg. Corp., 94 S.W.3d 795, 798 (Tex. App.—San Antonio 2002, no 
pet.); Lerma v. Bustillos, 720 S.W.2d 204, 
205–06 (Tex. App.—San Antonio 1986, no writ). Fernandez 
contends that, because of her biological relationship to Kenedy, she has an interest in the Kenedy estate that was prejudiced by the 1949 Humble Oil 
judgment.
            
It has long been the rule that a plaintiff’s good faith allegations are 
used to determine the trial court’s jurisdiction. See, 
e.g., Brannon v. Pac. Employers Ins. Co., 224 S.W.2d 466, 469 
(1949). A court may presume the truth of allegations supportive of 
standing to determine standing and dispose of litigation through summary 
judgment. See Tex. Ass’n of Bus. v. Tex. Air 
Control Bd., 852 S.W.2d 440, 446 (Tex. 1993) (“[W]hen a Texas appellate 
court reviews the standing of a party sua sponte, it must construe the petition in favor of the party 
. . . .”); Brown v. Todd, 53 S.W.3d 297, 305 n.3 (Tex. 2001) (“Because 
standing is a component of subject matter jurisdiction, we consider [it] as we 
would a plea to the jurisdiction, construing the pleadings in favor of the 
plaintiff.”); see also Laidlaw Waste Sys. (Dallas), Inc. v. City of 
Wilmer, 904 S.W.2d 656, 660 (Tex. 1995) (assuming that petitioner had 
standing to affirm summary judgment against petitioner); O’Quinn v. State Bar 
of Tex., 763 S.W.2d 397, 403 (Tex. 1988) (assuming that party had standing 
to decide that challenge lacked merit). In this case, Fernandez pled in her bill 
of review petition in district court that she is Kenedy’s non-marital child and, because of that 
relationship, she is entitled to an intestate inheritance if the district 
court’s 1949 judgment negating intestacy is set aside. For purposes of 
determining standing, then, the district court could presume that Fernandez is, 
as she alleges, Kenedy’s biological child. The Trust 
favors such an assumption, and Fernandez, who is hardly in a position to 
challenge it, made no objection on this basis.[20] We reject 
Fernandez’s peculiar argument that the district court should not have assumed 
her pleaded basis for standing to be true.
            
The court of appeals believed that employing such a presumption amounts 
to conferring standing by estoppel. 267 S.W.2d at 81 (citing Tex. Ass’n of 
Bus., 852 S.W.2d at 443–46). In this case, the Trust did ask the 
district court to assume paternity for purposes of its summary judgment motion. 
But, as we have already discussed, Fernandez did not object to that request, and 
Fernandez’s allegations, taken as true, were sufficient to establish standing. 
We have never said that presuming heirship in these 
sorts of cases amounts to conferring standing by estoppel or by agreement, or that this situation should 
depart from the general rule that the plaintiff’s good faith allegations are 
used to determine jurisdiction. We see no reason to alter it now, as such a rule 
would prevent parties from ever stipulating to facts relating to parentage and 
would prevent courts from deciding dispositive motions not dependent on 
parentage (e.g., laches and limitations), without some 
sort of evidentiary inquiry into heirship claims. 
See Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 
547, 554 (Tex. 2000) (recognizing that plaintiffs do not have to “put on 
their case simply to establish jurisdiction”). In this case, we conclude that 
Fernandez’s pleadings conferred standing, regardless of whether the alleged 
relationship was true or subject to rebuttal on the merits.
2. Direct Attack on 1949 Judgment
            
Because Fernandez’s claims are a direct attack on the 1949 Humble 
Oil judgment, brought by bill of review, the district court had authority to 
determine Fernandez’s standing to proceed, including whether she can establish 
heirship. A bill of review is brought as a direct 
attack on a judgment that is no longer appealable or subject to a motion for new 
trial. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 
(Tex. 2003). Because it is a direct attack, a bill of review must be 
brought in the court that rendered the original judgment, and only that court 
has jurisdiction over the bill. See, e.g., In re The John G. & 
Marie Stella Kenedy Mem’l 
Found., et al., 159 S.W.3d 133, 141, 146 (Tex. App.—Corpus Christi 2004, 
orig. proceeding) (holding that Judge Herman “not only erroneously concluded he 
had jurisdiction over these matters, but also actively interfered with the 
jurisdiction of the district courts”);[2][1] Richards v. Comm’n for Lawyer Discipline, 81 S.W.3d 506, 508 (Tex. 
App.—Houston [1st Dist.] 2002, no pet.) (“Because a bill of review is a direct 
attack on a judgment, only the court rendering the original judgment has 
jurisdiction over the proceeding.”); Solomon, Lambert, Roth & Assocs. 
Inc. v. Kidd, 904 S.W.2d 896, 900 (Tex. App.—Houston [1st Dist.] 1995, no 
writ) (“The requirement that a bill of review be filed in the same court that 
rendered the judgment under attack is a matter of jurisdiction . . . .”); 
Martin v. Stein, 649 S.W.2d 342, 346 (Tex. App.—Fort Worth 1983, writ 
ref’d n.r.e.) (per curiam) (“A bill of review or a 
petition in the nature of a bill of review is a proceeding in equity that has 
for its purpose the reversal or modification of a prior judgment of the same 
trial court. It is not a means of appeal of a judgment of one trial court to 
another trial court.”); cf. Austin Indep. Sch. 
Dist. v. Sierra Club, 495 S.W.2d 878, 881 (Tex. 1973) (“A direct 
attack is a proceeding instituted for the purpose of correcting the earlier 
judgment. It may be brought in the court rendering the judgment or in another 
court that is authorized to review the judgment on appeal or by writ of error. 
The purpose of a direct attack is to change the former judgment and secure the 
entry of a correct judgment in lieu of the earlier incorrect one.”). Here, the 
district court that rendered the 1949 will construction 
judgment has exclusive jurisdiction over any attack on that judgment by bill of 
review. See In re Kenedy Mem’l Found., 159 S.W.3d at 
143–44, 146 (holding that, because the bill of review cases in the underlying 
proceedings were properly filed in the courts that rendered the judgments under 
attack, jurisdiction attached in the district court). It follows that, under the 
facts of this case, all issues bearing on the validity of Fernandez’s attack on 
that earlier judgment are necessarily resolvable by the district court as part 
of its determination of the bill of review. When the district court has 
exclusive jurisdiction over the subject matter of a claim, Fernandez cannot 
procure relief in the probate court by characterizing the issue as solely one of 
heirship. See, e.g., Taylor v. Hill, 249 
S.W.3d 618, 625 (Tex. App.—Austin 2008, pet. denied) (holding that district 
court had jurisdiction over partition action and rejecting argument that claim 
requiring determination of heirs’ interest must be heard only in probate court); 
Trevino v. Lerma, 486 S.W.2d 199, 200 (Tex. 
Civ. App.—Beaumont 1972, no writ) (holding that district court had exclusive 
jurisdiction to hear suit to set aside deed and that claimants “could procure no 
relief in the probate court under the provisions of § 48 of the Probate 
Code”).
3. Probate Code
            
The court of appeals believed that “[t]he real jurisdictional problem 
plaguing the summary judgment is that it was rendered by a district court that 
did not have control over the heirship issues that are 
central to Fernandez’s petition.” 267 S.W.3d at 81. The 
court held that whether Fernandez had an interest in Kenedy’s and East’s estates “is undoubtedly a probate 
question that must be resolved by the probate court and, in this case, cannot be 
resolved in the district court.” Id. at 82. But 
the only given authority for this conclusion was a footnote in Palmer v. The 
Coble Wall Trust Co., Inc., 851 S.W.2d 178, 180 n.3 (Tex. 1992), which does 
not mention exclusive jurisdiction and does not hold that only a county court 
acting in probate has jurisdiction over heirship 
claims in the circumstances presented here. The cited footnote primarily 
addresses counties in which there is a statutory county court or a statutory 
probate court, id., which is not the case in Kenedy County. However, the footnote does go on to 
explain:
 
To 
further complicate matters, the district courts exercise some probate 
jurisdiction. The Probate Code provides that “[t]he district court shall have 
original control and jurisdiction over executors, administrators, guardians and 
wards under such regulations as may be prescribed by law.” Tex. Prob. Code § 5(a) (Supp. 1992). In those 
counties where there is no statutory court exercising probate jurisdiction, most 
probate matters must be filed in the constitutional county court, id. § 
5(b); however, the county judge may transfer contested matters to the district 
court, which may then hear them “as if originally filed in district court.” 
Id. In this situation the county court retains jurisdiction over the 
uncontested portions of the case. Id. The county judge may also request 
the assignment of a statutory probate judge to hear contested matters. 
Id.
 
Palmer, 
851 S.W.2d at 180 n.3. Neither section 5(b) of the 
Probate Code nor the footnote in Palmer addresses the situation at hand, 
which involves attacks on district court judgments in cases where the estates 
were fully administered and closed decades ago. In fact, the Probate Code does 
not authorize probate courts to exercise jurisdiction in these circumstances, 
where a decedent died testate and his or her estate was fully administered and 
closed.
            
In counties such as Kenedy with no statutory 
probate court, county court at law, or other statutory court exercising probate 
jurisdiction, “all applications, petitions, and motions regarding probate and 
administrations shall be filed and heard in the county court,” except that in 
contested probate matters, the contested portion can be assigned to a statutory 
probate court judge or transferred to district court. Tex. Prob. Code § 5(b).[22] “All courts exercising original probate 
jurisdiction shall have the power to hear all matters incident to an estate.” 
Id. § 5(f). “‘[I]ncident to an estate’ . . . include[s] the probate of wills, 
the issuance of letters testamentary and of administration, and the 
determination of heirship, and also include[s], but 
[is] not limited to, all claims by or against an estate, . . . all actions to 
construe wills, . . . and generally all matters relating to the settlement, 
partition, and distribution of estates of deceased persons.” Id. § 
5A(a). But we have said that a “court empowered with 
probate jurisdiction may only exercise its probate jurisdiction over matters 
incident to an estate when a probate proceeding related to such matters is 
already pending in that court.” Bailey v. Cherokee County Appraisal 
Dist., 862 S.W.2d 581, 585 (Tex. 1993); see Tex. Prob. Code § 5A(a), (b). Therefore, the probate court in this case could 
exercise jurisdiction over Fernandez’s heirship claim 
only if, before Fernandez brought that claim, a probate proceeding was already 
pending in that court. In this case, there is no open or pending estate in the 
probate court to which an heirship proceeding would be 
incident and, thus, the Probate Code does not authorize the probate court’s 
exercise of jurisdiction to determine heirship. See 
Schwartz v. Jefferson, 520 S.W.2d 881, 889 (Tex. 1975) (“The mere filing of 
a bill of review does not affect the finality of the judgment which is sought to 
be set aside.”); In re Kenedy Mem’l Found., 159 S.W.3d at 145 (acknowledging that the 
estates of Kenedy, his wife, and East “were closed 
long ago and not reopened by the mere filing of the bills of review,” so none of 
the estates were “pending”). Indeed, if the mere filing of a bill of review or 
an application for declaration of heirship were to 
reopen a closed estate and render it “pending” within the meaning of the Probate 
Code, no estate or probate judgment would ever truly be final because such 
judgments would always be subject to additional litigation in courts other than 
those that issued the judgments.
            
Moreover, section 48 of the Probate Code provides that a proceeding to 
declare heirship may be filed in the probate court 
only when a person died intestate as to some or all of his or her property, when 
a will has been probated or estate administered but real or personal property 
was omitted, or when there has not been a final disposition. Tex. Prob. Code § 48(a) (permitting 
suit for declaration of heirship “[w]hen a person dies intestate” and “there shall have been no 
administration in this State upon his estate” or when a will has been probated 
or an estate administered but property was “omitted from such will or from such 
administration”); see id. § 3(o) (defining “heirs” as “those persons . . 
. who are entitled under the statutes of descent and distribution to the estate 
of a decedent who dies intestate”). That is not the case here. Because Kenedy left a will that disposed of all his property, as 
determined by the district court in the Humble Oil suit, and because his 
estate was fully administered and closed, the Probate Code does not authorize 
the probate court to determine heirship.[23] See Cogley 
v. Welch, 34 S.W.2d 849, 853 (Tex. Comm’n App. 
1931, judgm’t adopted) (holding that court has 
“absolutely no authority . . . to exercise jurisdiction to declare heirship” when decedent died testate); McMahan v. 
Naylor, 855 S.W.2d 193, 194–95 (Tex. App.—Corpus Christi 1993, writ denied) 
(recognizing that issue of intestacy should be determined before heirship); Guajardo v. Chavana, 762 S.W.2d 683, 684–85 (Tex. App.—San Antonio 
1988, writ denied) (holding that heirship is not justiciable before intestacy is established); Buckner 
Orphans Home v. Berry, 332 S.W.2d 771, 775–76 (Tex. Civ. App.—Dallas 1960, 
writ ref’d n.r.e.) (holding 
that putative heirs “would first have to annul the wills left by deceased” 
before they had “such interest as would entitle them to come into the probate 
court asking for a declaration of heirship, or 
claiming rights in the estate as heirs”) . Authority to decide Fernandez’s heirship claims rests solely with the district court as part 
of its exclusive jurisdiction over the bills of review.[24]
B. Abatement
            
The Trust challenges the court of appeals’ holding that the later-filed 
case—the Humble Oil bill of review in the district court—must be abated 
to allow resolution of the earlier filed applications for declaration of heirship in the probate court.[25] 267 S.W.3d at 83. As a general rule, 
“the court in which suit is first filed acquires dominant jurisdiction to the 
exclusion of coordinate courts.” Bailey v. Cherokee County 
Appraisal Dist., 862 S.W.2d 581, 586 (Tex. 1993). We need not decide 
whether the general rule of dominant jurisdiction applies in this case, or in 
cases involving later-filed direct attacks that are exclusively within the 
jurisdiction of another court, because here Fernandez’s claims are not within 
the jurisdiction of the probate court.[26] See Gonzalez v. Reliant Energy, 
Inc., 159 S.W.3d 615, 622 (Tex. 2005) (holding that a dominant-servient inquiry was not implicated where the pleadings in 
the second-filed case could not be equally maintained in the first); Schuele v. Schuele, 119 S.W.3d 
822, 824 (Tex. App.—San Antonio 2003, no pet.) (holding 
that the concept of dominant jurisdiction may apply only “when separate suits 
are filed in courts with concurrent jurisdiction”). Accordingly, we reverse the 
portion of the court of appeals’ judgment remanding the case to the district 
court for abatement.
C. Merits
            
Although the court of appeals did not review the merits of the summary 
judgment, the Trust asks us to affirm that judgment, noting that the judgment 
does not involve and could not be affected by resolution of Fernandez’s heirship claim. To avoid unnecessary delay, we may consider 
issues of law rather than remanding them to the court of appeals. Placencio v. Allied Indus. Int’l, Inc., 724 
S.W.2d 20, 22 (Tex. 1987); see Tex. R. App. P. 60.2(c) (“The Supreme Court may . . . reverse 
the lower court’s judgment in whole or in part and render the judgment that the 
lower court should have rendered.”). We therefore next consider whether 
Fernandez’s claims are barred by limitations, one of the grounds on which the 
Trust sought summary judgment and Fernandez addressed on appeal.[27] See Malooly 
Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970) (recognizing that we 
can affirm a trial court’s judgment on a single valid ground). We review a trial 
court’s grant of summary judgment de novo. Tex. 
Mun. Power Agency v. 
Pub. Util. Comm’n, 253 S.W.3d 184, 192 (Tex. 2007). 
A defendant who conclusively negates at least one of the essential elements of a 
cause of action or conclusively establishes an affirmative defense is entitled 
to summary judgment. Randall’s Food Markets, Inc. v. 
Johnson, 891 S.W.2d 640, 644 (Tex. 1995).
1. Limitations
            
When limitations plainly bars a putative heir from proving her heirship, a court is not required to waste time and 
resources on a paternity determination before disposing of her claims. See 
Little v. Smith, 943 S.W.2d 414, 423 (Tex. 1997) (affirming summary judgment 
barring belated claims for inheritance, without first determining whether 
putative heir was, in fact, decedent’s biological granddaughter). The district 
court in this case granted summary judgment on both no-evidence and traditional 
motions for summary judgment in a broadly-worded order that does not specify its 
reasons. Among other grounds, the motions asserted the affirmative defense of 
limitations and argued that the discovery rule does not apply because its 
application would frustrate the state’s policy of preserving finality in probate 
proceedings.
            
When an heirship claim is brought after an 
administration of the decedent’s estate or a conveyance of the 
decedent’s property to a third party, courts have applied the four-year 
residual limitations period of Texas Civil Practice and Remedies Code section 
16.051. See, e.g., Cantu v. Sapenter, 
937 S.W.2d 550, 552 (Tex. App.—San Antonio 1996, writ denied); Smith v. 
Little, 903 S.W.2d 780, 787–88 (Tex. App.—Dallas 1995), rev’d in part on other grounds, 943 S.W.2d 414 
(Tex. 1997). Under any conceivable accrual date, the four-year statute of 
limitations ran well before Fernandez first asserted claims to the Kenedy and East estates. Fernandez conceded that the 
residual statute of limitations applies and has never denied that it bars her 
heirship claim absent the application of the discovery 
rule to save her claims, arguing that we should apply the discovery rule in 
heirship cases such as this.
2. Discovery Rule
            
“Texas courts have refused to apply the discovery rule to claims arising 
out of probate proceedings in most instances . . . .” Little, 943 S.W.2d at 420. Fernandez does not cite a 
single case holding that the discovery rule applies to save a non-marital 
child’s heirship claim. Indeed, we have not applied 
the discovery rule in such a context. See Natural Gas Pipeline Co. of Am. v. 
Pool, 124 S.W.3d 188, 198 (Tex. 2003) (“This is tantamount to saying that 
the running of limitations is suspended until the record titleholder obtains 
actual knowledge of what it owns. This is a novel proposition indeed. It would 
mean, for example, that limitations would be suspended whenever heirs did not 
realize that they had inherited an interest. That has never been the law in 
Texas.”) We have, however, held that the rule does not apply to belated claims 
of inheritance brought by adoptees. Little, 943 S.W.2d 
at 420. In that case, we recognized the difficulty of promptly bringing 
inheritance claims:
 
In many 
cases, however, adoptees may be unable to timely assert inheritance rights, even 
with the exercise of the utmost diligence. Not all adoptees may know that they 
are adopted within the applicable limitations period. Even if they know that 
they are adopted, they may not know where they were born or, more to the point, 
where the adoption proceedings occurred, so that they may attempt to obtain 
access to their birth records. Conducting a meaningful search for your identity 
is difficult if you do not know where to begin that search. And assuming an 
adoptee found the correct court to petition, that court could well refuse to 
open adoption records if the only basis for doing so was to allow the adoptee to 
see if any inheritance claims existed.
 
Id. at 418. A non-marital child who grows up not 
knowing the identity of her father could be said to face similar difficulties. 
But the Court in Little balanced those concerns against a “strong public 
interest in according finality to probate proceedings,” declining to apply the 
discovery rule. Id. at 421 (analyzing legislative 
policy governing adoption). Although the Little context of the 
legislative scheme governing adoption is distinguishable from the instant case, 
the Court’s reasoning in Little applies 
with equal force to belated inheritance claims brought by non-marital children. 
See Turner v. Nesby, 848 S.W.2d 872, 
877–78 (Tex. App.—Austin 1993, no writ) (holding that a state’s interest in 
orderly administration of estates and finality of judgments distributing estates 
can provide a basis for barring a non-marital child’s claims against an estate, 
even if meritorious); see also Tex. Prob. Code §§ 40, 42(b) 
(demonstrating that section 42(b), which allows non-marital children to inherit 
from their biological parents, is in all relevant respects the same as section 
40, which allows adopted children to inherit from their biological parents). We 
have long recognized the importance of according finality to judgments, and we 
have held courts to stringent bill of review standards to protect that policy 
favoring finality. See, e.g., Transworld Fin. Servs. Corp. v. Briscoe, 722 S.W.2d 407, 
407 (Tex. 1987) (“The grounds upon which a bill of review 
can be obtained are narrow because the procedure conflicts with the fundamental 
policy that judgments must become final at some point.”); Alexander v. Hagedorn, 226 S.W.2d 996, 998 (Tex. 1950) (“As said by 
the Supreme Court of California, ‘Endless litigation, in which nothing was ever 
finally determined, would be worse than occasional miscarriages of justice.’” 
(quoting Pico v. Cohn, 25 P. 970, 971 (Cal. 
1891)); Johnson v. Templeton, 60 Tex. 238, 238 (1883) (“Where the final 
judgment of a court of competent jurisdiction has been once solemnly pronounced, 
it ought not to be lightly disturbed. It is alike the interest of individual 
suitors and of the public at large that there should be at some period an end 
put to litigation.”). Indeed, if we were to apply the discovery rule in this 
context, we would subject estates to open-ended litigation, a result squarely at 
odds with the policy that has informed our jurisprudence for more than a 
century. See Kerlin v. Sauceda, 263 S.W.3d 920, 932 & n.28 (Tex. 2008) 
(Brister J., concurring) (“Recent years have seen a 
number of suits in South Texas seeking to reopen title claims to lands that have 
been dormant for decades or centuries.”).
            
Fernandez argues that application of the discovery rule is 
constitutionally required and that the United States Supreme Court already 
weighed the relevant policies and found the policy in favor discovery rule 
application to allow non-marital children to assert their inheritance rights to 
be the stronger interest. See Reed v. Campbell, 476 U.S. 852, 856 (1986); 
Trimble v. Gordon, 430 U.S. 762, 776 (1977). We disagree. In Trimble 
v. Gordon, the United States Supreme Court struck down on equal protection 
grounds a statute that allowed non-marital children to inherit from their 
intestate mothers only, while children of a marriage could inherit from both 
their intestate mothers and their fathers. 430 U.S. at 
767. Under the Court’s analysis, a state could not provide for the total 
statutory disinheritance of a child from a father’s estate where the child was 
born out of wedlock without subsequent marriage of his or her parents. Id. 
Later, in Reed v. Campbell, the Court struck down a Texas statute 
barring non-marital children from inheriting from their fathers except under 
special circumstances, such as where their parents had subsequently married. 
476 U.S. at 857. Although a state cannot completely bar 
the inheritance of non-marital children, the Court clearly indicated that states 
may place reasonable limitations on such inheritance, so that estates do not 
remain subject to claims indefinitely:
 
The state 
interest in the orderly disposition of decedents’ estates . . . justifies the 
enforcement of generally applicable limitations on the time and the manner in 
which claims may be asserted. After an estate has been finally distributed, the 
interest in finality may provide an additional, valid justification for barring 
the belated assertion of claims, even though they may be meritorious and even 
though mistakes of law or fact may have occurred during the probate process.
 
Id. at 
855–56; see Lalli v. Lalli, 439 U.S. 259, 268 (1978) (stating that the Court 
has long recognized that a state’s goal to provide for the just and orderly 
disposition of property at death “is an area with which the States have an 
interest of considerable magnitude”). Neither the United States Supreme Court 
nor this Court has held that the discovery rule applies to claims made by 
non-marital children, and we see no reason to change course today.[28]
            
Because the discovery rule does not apply in this case, and because 
Fernandez concedes that absent application of the discovery rule her claims are 
time-barred, we need not consider when Fernandez discovered or by the exercise 
of reasonable diligence should have discovered the truth of her 
paternity.[29] Instead, because the four-year residual 
limitations period expired long before Fernandez filed her bills of review, we 
reinstate the district court’s summary judgment.[30] See Ladehoff v. Ladehoff, 436 
S.W.2d 334, 336 (Tex. 1968) (holding that a judgment admitting a will to probate 
is “binding upon the whole world and specifically upon persons who have rights 
or interest in the subject matter, and this is so whether those persons were or 
were not personally served”).
III. Anti-suit Injunction
            
The court of appeals held that because its summary judgment was improper 
and its proceedings should have been abated, the district court could not enter 
an anti-suit injunction. 267 S.W.3d at 84–85. A court 
may exercise its discretion to issue an anti-suit injunction in four 
circumstances: “1) to address a threat to the court’s jurisdiction; 2) to 
prevent the evasion of important public policy; 3) to prevent a multiplicity of 
suits; or 4) to protect a party from vexatious or harassing litigation.” Gonzalez v. Reliant Energy, Inc., 159 S.W.3d 615, 623 (Tex. 
2005). “The party seeking the injunction must show that ‘a clear equity 
demands’ the injunction.” Golden Rule Ins. Co. v. Harper, 925 S.W.2d 649, 
651 (Tex. 1996) (per curiam) (quoting Christensen 
v. Integrity Ins. Co., 719 S.W.2d 161, 163 (Tex. 1986)). Because we hold 
that the probate court lacks jurisdiction over Fernandez’s heirship claims, we do not foresee a continuing threat of 
Fernandez resuming this litigation in other courts. Accordingly, while we 
disagree with the court of appeals’ reasoning, we affirm the portion of the 
judgment that the district court’s anti-suit injunction be reversed and the 
Trust’s request for injunctive relief be denied. See 
Univ. of Tex. v. Morris, 344 S.W.2d 426, 429 (Tex. 1961) (recognizing that 
this Court is not constrained to the trial court record at the time an 
injunction was issued when events subsequent to the issuance of an anti-suit 
injunction “render the cause for injunctive relief entirely moot or academic”); 
see also See Gannon v. Payne, 706 S.W.2d 304, 307 (Tex. 1986) (“The 
circumstances of each situation must be carefully examined to determine whether 
the [anti-suit] injunction is required to prevent an irreparable miscarriage of 
justice.”).
IV. Conclusion
            
For the reasons expressed above, we reverse the portions of the court of 
appeals’ judgment that relate to jurisdiction and abatement. We hold that the 
discovery rule does not apply to heirship and 
inheritance claims brought by non-marital children, or to bill of review claims 
to set aside probate judgments. We therefore render judgment reinstating the 
district court’s summary judgment. We affirm the portion of the court of 
appeals’ judgment that relates to the anti-suit injunction.
 
                                                                                                                                                
            
_________________________
                                                                                                                                                            
Paul W. Green
                                                                                                                                                            
Justice
 
 
OPINION DELIVERED: April 16, 
2010






[1] 
The specific dates and sequence of events are 
generally not significant to the outcome of this case. We include them for 
purposes of organizing the complicated relevant procedural events, and to refer 
to certain specific orders entered by the various trial courts.

[2] 
In 1949, the probate court “ordered that the 
proceedings in [Kenedy’s] Estate, in so far as the 
administration of this estate is concerned, be, and they are hereby closed, save 
and except as to such proceedings as are required in determining and fixing the 
Inheritance Tax, if any, due upon said Estate.” Although the court signed an 
order fixing inheritance tax in 1952, it does not appear from the record that 
the court subsequently issued any other orders relating to Kenedy’s estate.

[3] 
We refer to the petitioners in this case 
collectively as the Trust.

[4] 
Kenedy owned approximately 200,000 acres of the La Parra Ranch 
at his death, and his sister, Sarita Kenedy East, owned the other half.

[5] 
Rowland married Desiderio Peña during Fernandez’s 
childhood, and later married Tom Goates when Fernandez 
was in her twenties.

[6] 
In 2002, the County Court at Law No. 5 of Nueces 
County appointed Dr. Fernandez to serve as guardian of his mother’s estate. It 
appears that he is now prosecuting the litigation on Fernandez’s 
behalf.

[7] 
We describe this as a bill of review, since in 
substance this is what it was, although Fernandez did not style it as such, 
instead calling it an “application to set aside order probating will with 
application for declaration and determination of heirship.” Fernandez’s later filings in these probate cases 
were expressly referred to as bills of review.

[8] 
On appeal here as 08-0528, The John G. & 
Marie Stella Kenedy Mem’l 
Found. v. Fernandez.

[9] 
The appointment order stated that Judge Herman 
would hold all rights, powers, and privileges held by the regular judge of the 
court and the attendant jurisdiction of a statutory probate court. See 
Tex. Gov’t Code § 25.0022.

[10] The cases 
were consolidated into cause no. 395, in which Fernandez then sought a 
determination of heirship and her share of an interest 
in intestate property.

[11] Along with 
the Trevino bill of review, Fernandez had filed a “petition with 
application for temporary restraining order,” in Fernandez v. Exxon Mobil 
Corp., No. 02-2331-C (97th Dist. Ct., Nueces County), alleging that Humble 
Oil & Refining Company had become known as Exxon/Mobil. That particular suit 
is not before us on appeal.

[12] This bill of 
review proceeding gave rise to the instant appeal. Originally, the Humble Oil 
suit had been cause no. 35 in the 28th District Court of Kenedy County. According to the Trust, the 105th District 
Court became the successor to the 28th District Court of Kenedy County on or about September 1, 
1985.
 

[13] On appeal 
here as 08-0529, The John G. & Marie Stella Kenedy Mem’l Found. v. 
Fernandez.

[14] Fernandez 
first moved to abate the Humble Oil and Garcia bills of review in 
May 2003 so that Judge Herman could transfer the cases to himself. With regard 
to the Trevino bill of review, Judge Herman had already purported to 
transfer the case to himself. Later, in August 2003, Fernandez also moved to 
abate the Trevino bill of review, asserting that, “to the extent [the 
district court] retains the case,” the court should stop its proceedings to let 
Judge Herman proceed.

[15] No original 
proceeding was filed in this Court concerning whether Judge Herman abused his 
discretion by ordering a transfer from district court, as the court of appeals 
found.

[16] In re The 
John G. & Marie Stella Kenedy Mem’l Found., 04-0607; In re Frost Nat’l Bank, 
04-0608.

[17] On February 
25, 2008, we abated those exhumation mandamus cases pending resolution of the 
underlying appeal and two related appeals. See 267 S.W.3d 75, 79 n.4 
(Tex. App.—Corpus Christi 2008, pet. granted); 51 Tex. Sup. Ct. J. 446 (Feb. 15, 
2008). We lifted our abatement after the court of appeals issued its opinions 
and judgments concerning the district court’s summary judgments and anti-suit 
injunctions. See 51 Tex. Sup. Ct. J. 1407 (Sept. 26, 
2008).

[18] The 
Foundation sought summary judgment in the Trevino proceeding, and the 
Trust sought summary judgment in the Humble Oil 
proceeding.

[19] The district 
court never ruled on Fernandez’s motion to abate in the Garcia bill of 
review, or seemed to acknowledge Fernandez’s attempts to transfer the case to 
Judge Herman. Its final summary judgment order stated categorically that all 
relief requested by Fernandez is denied.

[20] Fernandez 
also argues that the district court could not assume standing or rule on 
standing because that issue is currently pending with this Court in the mandamus 
cases regarding exhumation of Kenedy’s body. 
See In re The John G. & Marie Stella Kenedy Mem’l Found., 04-0607; 
In re Frost Nat’l Bank, 04-0608. She essentially suggests that this Court 
has exclusive jurisdiction over the standing (and heirship) issue because it is under consideration in the 
mandamus cases. But that position is inconsistent with her insistence that the 
probate court has exclusive jurisdiction, and it overstates the question before 
the Court in the exhumation cases. There, we must determine whether the probate 
court had authority to order the exhumation of Kenedy’s body for DNA testing to determine the issue of 
Kenedy’s paternity. Although the paternity issue may 
be related to Fernandez’s standing to pursue bills of review to reopen the 
estates, we were not asked in the mandamus cases to decide the issue of 
Fernandez’s standing in the district court.

[21] In its 
opinion in the instant case, the court of appeals explained the apparent 
conflict between its earlier mandamus ruling on Judge Herman’s transfer order 
and the underlying holding that “the probate court holds exclusive jurisdiction 
over the heirship and probate matters at the center of 
Fernandez’s petition for an equitable bill of review.” 267 
S.W.2d at 82. The court claims that its earlier ruling arose out of an 
original proceeding involving the limited issue of the probate court’s authority 
to transfer the Humble Oil case to itself. Id. at 83. But the court’s first step in analyzing 
that issue was to determine whether the bills of review were filed in the proper 
court, i.e., the court in which the judgment was entered. In re Kenedy Mem’l Found., 159 S.W.2d at 143 (“Here, the three 
transferred bills of review were originally filed in the courts that rendered 
the judgments under attack.”). The court then went on to hold that a bill 
of review seeking to reopen an estate closed long ago does not render the estate 
“pending” as that word is used in section 5B of the Probate Code. Id. at 143–46. We do not see the distinction and read 
the opinions to be inconsistent.

[22] What is 
widely referred to—and cited—as the Texas Probate Code is technically still 
located in the Texas Revised Civil Statutes, having never been codified 
according to the Legislature’s 1963 mandate to the Texas Legislative Council. 
See Tex. Gov’t 
Code § 323.007 (calling for “a permanent 
statutory revision program for the systematic and continuous study of the 
statutes of this state and for the formal revision of the statutes on a topical 
or code basis”). It was, however, revised in 2009, in 
preparation for codification. See Act of June 3, 2009, 81st Leg., R.S., 
ch. 1351, 2009 Tex. Gen. Laws 4273–82. Much of it will 
be redesignated and codified in the newly-adopted 
Texas Estates Code, which will not become operative until 2014. See id. § 
15, 2009 Tex. Gen. Laws 4282. Some former probate provisions will not be 
codified, however. For example, the 81st Legislature repealed parts of section 5 
of the Probate Code, effective in 2009. See id. § 
12(h), 2009 Tex. Gen. Laws 4279. The jurisdictional provisions of section 
5 were effectively replaced by new jurisdictional provisions, located in 
sections 4A–4H. See id. § 12(b), 2009 Tex. Gen. Laws 4275–78. Because 
these revisions do not affect our analysis in the instant case, we will continue 
to cite and refer to the relevant previous sections of the Probate Code in this 
opinion. See id. §12(i), 2009 Tex. Gen. Laws 
4279 (“An action filed or proceeding commenced before the effective date of this 
Act is governed by the law in effect on the date the action was filed or the 
proceeding was commenced, and the former law is continued in effect for that 
purpose.”).

[23] Fernandez 
also relies on section 42(b) of the Probate Code, relating to the rights of 
non-marital children to inherit from their fathers, which states in 
part:
A person claiming to be a biological child of the 
decedent, who is not otherwise presumed to be a child of the decedent, or 
claiming inheritance through a biological child of the decedent, who is not 
otherwise presumed to be a child of the decedent, may petition the probate court 
for a determination of right of inheritance.
Tex. Prob. 
Code § 42(b). But section 42 was enacted in 1955, years after Kenedy died, and only the statutes in effect at the time of 
death govern disposition of the estate. See Dickson v. Simpson, 807 S.W.2d 726, 727 (Tex. 1991). Moreover, as the court of 
appeals recognized, the predecessor statute to section 42 precluded a 
non-marital child from inheriting from her father’s estate unless the parents 
subsequently married and the child’s father recognized the child as his own. 267 
S.W.3d at 81 (citing Act to Regulate the Descent and Distribution of Intestates’ 
Estates approved Jan. 28, 1840, Republic of Texas, First Session of Third 
Congress, reprinted in 2 H.P.N. Gammel, The 
Laws of Texas 1822–1897, at 306–09 (Austin, Gammel 
Book Co. 1898)); see Dickson, 807 S.W.2d at 727. Neither of those 
circumstances exist here. We therefore reject the 
contention that section 42(b), or even the previous statute governing 
inheritance rights of non-marital children, gives the probate court jurisdiction 
in this case.

[24] Fernandez 
does not seem to dispute that if the district court were to decide her heirship claim, it could do so on 
the issue on the basis of limitations, without having to determine paternity at 
the outset. 
We address the district court’s summary 
judgment below. Additionally, we acknowledge that if it were possible for 
Fernandez to successfully set aside the 1949 Humble Oil judgment and have 
Kenedy’s will construed to effectuate some intestacy, 
the probate court might then have jurisdiction under section 48 of the Probate 
Code.

[25] The Trust 
also contends that Fernandez failed to preserve any argument regarding abatement 
in her briefing to the court of appeals. Although Fernandez did not specifically 
identify abatement as one of the issues presented, she complained about the 
district court’s refusal to abate in her anti-suit injunction discussion. Even 
assuming Fernandez preserved the abatement argument, we conclude that the 
grounds for abatement were not met.

[26] We note that 
even if the probate court were required to determine heirship before subject matter jurisdiction attached in the 
district court, abatement may not be the proper remedy. See State v. 
Morales, 869 S.W.2d 941, 949 (Tex. 1994) (“When a court lacks jurisdiction, 
its only legitimate choice is to dismiss.”).

[27] The Trust 
contends that Fernandez did not adequately challenge all potential summary 
judgment grounds and, consequently, we must affirm the summary judgment. See 
Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 
(Tex. 1970) (“The judgment must stand, since it may have been based on a ground 
not specifically challenged by the plaintiff . . . .”). Fernandez admits that 
she did not respond to every argument made in the motions for summary judgment 
but claims that she did address every ground on which summary judgment was 
sought, including limitations. See id. (requiring challenge of the grounds only, not every argument 
in a motion for summary judgment). Whether Fernandez made a 
sufficiently complete challenge or not, our result does not 
change.

[28] We have also 
never applied the discovery rule in the context of equitable bills of review. 
Fernandez argues that the discovery rule applies to save bill of review claims 
that would otherwise be time-barred, citing cases in which courts of appeals 
have applied the discovery rule in cases of extrinsic fraud. See, 
e.g., Vandehaar v. ALC Financial Corp., 25 
S.W.3d 406, 409 & n.2 (Tex. App.—Beaumont 2000, pet. denied); Defee v. Defee, 966 
S.W.2d 719, 722 (Tex. App.—San Antonio 1998, no pet.). In this case, we do not 
reach the question of whether extrinsic fraud, or some other circumstances, 
might compel application of the discovery rule to equitable bills of 
review.

[29] The Trust 
asserts that even if Fernandez could invoke the discovery rule, summary judgment 
was proper because the evidence shows that Fernandez was on inquiry notice of 
her alleged claim of paternity before Kenedy’s death 
and decades before filing her bills of review. Fernandez testified that, based 
on comments made by her cousins, she suspected Kenedy 
might be her father as early as age 14 or 15. Fernandez also said that she 
suspected Kenedy was her father because he brought her 
dolls for Christmas, and fruit. Fernandez further stated that as a young adult, 
sometime around her early twenties, she heard her stepfather say several times 
to her mother that he was “supporting somebody else’s fun,” and that he was 
going to get child support from Kenedy for Fernandez. 
But Fernandez did not bring the bills of review for more than 50 years, until 
she was 76. Fernandez says it has been well established that she was not aware 
of her status as a non-marital child until 2000, when her mother confirmed that 
Kenedy was her father. We need not resolve this 
dispute, as we conclude that the discovery rule does not apply in this context 
as a matter of law.

[30] We note that 
a bill of review is generally available to a party who exercised due diligence 
in pursuing all adequate legal remedies against a former judgment and did not 
ignore available legal remedies. Wembley Inv. Co. v. Herrerra, 11 S.W.3d 924, 927 (Tex. 1999) (per curiam). Further, relief by equitable bill of review 
will generally be granted to a party which, “through no fault of its own, [was] 
prevented from making a meritorious claim or defense by the fraud, accident, or 
wrongful act of the opposing party.” Id. We need not determine whether, 
on these facts, relief by bill of review was available to 
Fernandez.